# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TISHA REED**, **NATASHA WALKER**, and **KAYLEE METZ**, on behalf of themselves and all others similarly situated, | ) ) ) | Case No.: 1:15-cv-00298-SHR |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **FRIENDLY'S ICE CREAM, LLC** and **TICC, Inc.,** | ) ) ) | **JOINT STIPULATION OF SETTLEMENT AND RELEASE** |
| Defendants. | ) ) | |

THIS JOINT STIPULATION OF SETTLEMENT AND RELEASE (the "Agreement") is entered into by and between Tisha Reed ("Reed"), Natasha Walker ("Walker"), and Kaylee Metz ("Metz") (collectively, the "Named Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent (the "Class Members," as further defined herein), as well as the individuals who filed Consents to Join the Action, *i.e.*, Darrell Costley, Carly Dillon, Olivia Germuth, Karen Henry, Tron Hodges, Kerri Anne Kraemer, Mitchell Mendoza, Caitlyn Rohrbaugh, Kendra Snyder, Katherine Sterner, Keighley Taylor, Kolton Wansel, Stephanie Wade, Amy Inskip, Samantha Montz, Lori Rosenberry, Dustin Hollingsworth, Laceyanne Thomas and Rejeane Bennett (collectively, the "Opt-in Plaintiffs") (collectively "Plaintiffs") on the one hand and, on the other hand, FIC HOLDINGS, LLC ("Friendly's"), the successor by merger of FRIENDLY'S ICE CREAM, LLC, and TICC, Inc., ("TICC") (collectively "Defendants"), with Defendants and Plaintiffs being referred to collectively as the "Parties".[1]

WHEREAS, on February 11, 2015, former Named Plaintiff Lacey Zartman filed a civil action in the United States District Court for the Middle District of Pennsylvania captioned *Lacey Zartman v. Friendly's Ice Cream, LLC*, Civil Action No. 1:15-cv-00298-SHR. Because Zartman's claims against Friendly's were subject to an arbitration agreement, she was terminated as a Plaintiff on June 1, 2015. On the same date, Reed and Walker filed a First Amended Class and Collective Action Complaint against Friendly's, which modified the caption to read *Tisha Reed and Natasha Walker v. Friendly's Ice Cream, LLC*. On August 28, 2015 Reed and Walker filed a Second Amended Class and Collective Action Complaint, which added Kaylee Metz as a Plaintiff and added TICC, a licensed Friendly's franchisee that operates in Pennsylvania, as a Defendant. The modified caption thus read *Tisha Reed, Natasha Walker, and Kaylee Metz v. Friendly's Ice Cream, LLC and TICC Inc.*, Civil Action No. 1:15-cv-00298-SHR (the "Action");

---

[1] The capitalized words or terms in the introductory and recital paragraphs of this Agreement are intended to be consistent with the defined terms that appear in Section 1. In the event of a conflict, or in the event that the defined terms are more extensive, the defined terms in Section 1 shall control.

WHEREAS, as part of and in connection with the settlement set forth herein, Named Plaintiffs will file a Third Amended Complaint that adds wage and hour class action claims under the laws of Connecticut, Florida, Massachusetts, Maine, New Hampshire, New York, New Jersey, Rhode Island, Virginia, and Vermont, in addition to the Pennsylvania state law wage and hour claims and Fair Labor Standards Act claims already asserted in the Action;[2]

WHEREAS, in the Action Plaintiffs asserted the following claims against Friendly's: (1) that Friendly's failed to pay Servers for off-the-clock work during unpaid meal breaks and after their scheduled shifts ("Off-the-Clock claim"); (2) that Friendly's required Servers to spend more than 20% of their work time on non-tipped tasks unrelated to their duties as Servers, for which they received the tipped minimum wage rate, as opposed to the regular minimum wage rate ("Non-Tipped work claim"); and (3) that Friendly's failed to pay Servers overtime. Plaintiffs also asserted Off-the-Clock and Non-Tipped work claims against Friendly's as a joint employer of Servers who worked at stores owned and operated by franchisees of Friendly's;

WHEREAS, in the Action Plaintiff Metz asserted a Non-Tipped work claim against TICC;

WHEREAS, on August 18, 2016, Friendly's, Friendly's Counsel, and Class Counsel participated in a mediation of this matter in Murray Hill, New Jersey, which was conducted by an experienced class action mediator, Hunter R. Hughes, Esq., of Hunter ADR (the "Mediator"), and reached an accord resulting in this Agreement;

WHEREAS, Defendants dispute Plaintiffs' claims, deny that Plaintiffs are entitled to any relief, and would zealously assert numerous factual and legal defenses in the event the Action continued. Nonetheless, without expressly or impliedly admitting or conceding any liability, fault, wrongdoing, harm, or damages whatsoever, Defendants have agreed to settle the Action on the terms and conditions set forth in this Agreement, in order to avoid the burden, expense, and uncertainty of continuing the Action;

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants in the Action, conducted interviews with putative class and collective members, obtained and reviewed documents related to Defendants' respective compensation policies and analyzed their respective payroll data, and based on their analysis and evaluation of a number of factors, and recognizing the substantial risks of Action, including the possibility that the Action, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there is a risk that the Action might not be conditionally or finally certified as a collective action pursuant to the FLSA and might not be certified as a class action pursuant to Rule 23, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are in the best interests of the Plaintiffs; and

---

[2] In the event that the Parties' Agreement is not finally approved by the Court, Plaintiffs agree to withdraw their Third Amended Complaint, and Defendants shall have the right to oppose the Third Amended Complaint, or any other amended complaint, on any grounds.

WHEREAS, the purpose of this Agreement is to fully, finally and forever settle and resolve all claims (including all Released Claims, as hereinafter defined) and dispute(s) between Plaintiffs and Defendants asserted in and/or that arise out of the Action;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

## 1.    DEFINITIONS

The following terms, as used in this Agreement both above and below, shall have the meanings ascribed to them in this Definitions section.

1.1    **Action**.  "Action" means the claims represented in the class and collective action captioned *Tisha Reed, Natasha Walker, and Kaylee Metz v. Friendly's Ice Cream, LLC and TICC Inc.,* Civil Action No. 1:15-cv-00298-SHR, venued in the United States District Court for the Middle District of Pennsylvania.

1.2    **Agreement**.   "Agreement" means this Joint Stipulation of Settlement and Release, including exhibits hereto.

1.3    **Acceptance Period**.   "Acceptance Period" means the two hundred (200)-day deadline following the date that a Settlement Check is mailed, by which time a Class Member must endorse and negotiate his or her Settlement Check.

1.4    **Claim Form**.  "Claim Form" means the form Class Members must submit to the Settlement Claims Administrator in accordance with Section 2.5, below a form of which is attached as Exhibit B.

1.5    **Class Counsel.**  "Class Counsel" or "Plaintiffs' Counsel" means Jeremiah Frei-Pearson, Esq. of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, 445 Hamilton Avenue, Suite 605, White Plains, NY 10601, JFrei-Pearson@fbfglaw.com, and David J. Cohen, Esq., of Stephan Zouras, LLP, 604 Spruce Street, Philadelphia, PA 19106, dcohen@stephanzouras.com

1.6    **Class Members**.  "Class Members" means the Friendly's Class Members and the TICC Class Members.

1.7    **Class Period**.  "Class Period" means the Friendly's Class Period(s) and the TICC Class Period.

1.8    **Compensation/Benefits**.   "Compensation/Benefits" means any financial consideration or any form of benefit that Friendly's or TICC provided, offered, or otherwise made available to their respective eligible employees, including without limitation any form of compensation, incentives, bonuses, pension benefits, welfare benefits, perquisites, awards, payments, or contributions; and specifically includes any payment, contribution, or increase to or for any  ERISA or non-

ERISA benefit, benefit level, or benefit plan (including without limitation any pension benefit plan (such as a defined benefit, defined contribution, 401(k) or profit sharing plan), or welfare benefit plan (such as a healthcare benefits, dental benefits, life insurance benefits, or disability benefits plan)).

1.9     **Compensation/Benefits Plan**.  "Compensation/Benefits Plan" means any written or unwritten plan, policy, practice, agreement, arrangement, understanding, contract, employee manual, summary plan description, or other document that provides, offers, describes, or summarizes any Compensation/Benefits.

1.10    **Court**.  "Court" means the United States District Court for the Middle District of Pennsylvania.

1.11    **Days**.  "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.12    **Defendants.**  "Defendants" means Friendly's (defined below) and TICC (defined below).

1.13    **Defendants' Counsel.**  "Defendants' Counsel" means Friendly's Counsel and TICC Counsel.

1.14    **Effective Date**. "Effective Date" means the later of the following dates:

   (A)    If there is no appeal of the Court's Final Approval Order, the date 31 days after entry of such Order; or

   (B)    If there is an appeal of the Court's Final Approval Order, the day after all appeals are resolved in favor of final approval of the terms and conditions of this Agreement.

1.15    **Employer Payroll Taxes.**  "Employer Payroll Taxes" means FICA, FUTA, SUTA, and any and all other federal, state, and local taxes and withholdings an employer is required to make in connection with the payment of wages or other employment compensation.

1.16    **Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.17    **Final Approval Order.**  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, as more fully described in Sections 2.8, 2.9 and 2.10, below.

1.18    **Friendly's.**  "Friendly's" means FIC HOLDINGS, LLC, the successor by merger with FRIENDLY'S ICE CREAM, LLC.

**1.19   Friendly's Class Member(s)**.  "Friendly's Class Member(s)" means any person currently or formerly employed by Friendly's as a Friendly's Server in a Friendly's Store during in the Friendly's Class Period.

**1.20   Friendly's Class Period.**  "Friendly's Class Period" means, for Servers currently and formerly employed by Friendly's at a Friendly's Store in Connecticut, Florida, Maine, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Virginia, and Vermont, the period January 1, 2013 to the date of the Preliminary Approval Order, which period is understood to encompass the applicable time period under the FLSA, except that (1) for Servers who worked in New York, Florida and Maine, the Class Period shall commence on January 9, 2012; and (3) for Named Plaintiffs, Opt-in Plaintiffs and Servers who worked in the State of Pennsylvania, the Class Period shall commence on February 11, 2012.

**1.21   Friendly's Counsel.**  "Friendly's Counsel" means Kathleen McLeod Caminiti, Esq., J. Hagood Tighe, Esq., and Heather Z. Steele, Esq., all of the law firm Fisher & Phillips LLP.  All notices required by this Agreement to be directed to Friendly's Counsel shall be directed both to Kathleen McLeod Caminiti, Esq., Fisher Phillips, 430 Mountain Ave, Suite 303, Murray Hill, New Jersey 07974, (908) 516-1050, kcaminiti@fisherphillips.com, and to J. Hagood Tighe, Esq., Fisher & Phillips LLP, 1320 Main Street, Suite 750, Columbia, SC 29201, (803) 255-0000, htighe@fisherphillips.com.

**1.22   Friendly's Maximum Settlement Payment.**  "Friendly's Maximum Settlement Payment" means the gross total of Three Million Five Hundred Thousand Dollars ($3,500,000.00).  The Friendly's Maximum Settlement Payment shall be allocated as follows:   up to $3,197,713 to the Friendly's Net Settlement Payment ("Friendly's Allocation") and up to $189,255 to the TICC Net Settlement Payment ("TICC Allocation"). Under no circumstances will Friendly's be required to pay more than Three Million Five Hundred Thousand Dollars ($3,500,000.00) under this Agreement, except that Friendly's separately agrees to pay Court-approved attorneys' fees and costs of up to One Million One Hundred Thousand Dollars ($1,100,000.00) as set forth in Section 3.2.

**1.23   Friendly's Net Settlement Payment**.  "Friendly's Net Settlement Payment" means that portion of the Friendly's Allocation of the Friendly's Maximum Settlement Payment to be deposited by Friendly's into the QSF (or a subaccount thereof) and that is necessary to pay: (1) the Settlement Claims Administrator's fees and costs; (2) any Named Plaintiff Service Awards; (3) any Opt-In Service Awards; and (4) the claims of all Friendly's Participating Class Members as determined in accordance with Section 3.5 and other applicable provisions of this Agreement.

1.24    **Friendly's Participating Class Member**.  "Friendly's Participating Class Member" means a Friendly's Class Member who submits a valid Claim Form in accordance with Section 2.5, but does not submit a valid Opt-out Statement.

1.25    **Friendly's Server.**  "Friendly's Server" means any person currently or formerly employed by Friendly's in a server capacity during the Friendly's Class Period whose time was recorded in the following job categories:  server, server open/close, and server trainer.  For purposes of this Agreement, status as a Friendly's Server (and the number of weeks as a Friendly's Server) will be determined by Friendly's timekeeping and payroll records, with the respective job codes: 205, 220, and 260.

1.26    **Friendly's Store**.  "Friendly's Store" means a Friendly's restaurant/store while it is owned and operated by Friendly's and specifically does not mean Friendly's restaurant(s)/store(s) while they are owned and operated by any franchisee(s).

1.27    **Maximum Settlement Amount**.  "Maximum Settlement Amount" means Three Million Five Hundred Thirty-Five Thousand Dollars ($3,535,000.00), which equals the sum of the Friendly's Maximum Settlement Amount and the TICC Maximum Settlement Amount. The Maximum Settlement Amount is the total amount that Defendants, according to their respective funding obligations under this Agreement, have agreed to pay to fully and finally resolve and settle the Action.  Under no circumstances shall either Defendant be obligated pay more than their respective share of the Maximum Settlement Amount in connection with, and for purposes of making the payments allowable under, this Agreement. The Parties expressly agree that the Maximum Settlement Amount is a cap on any and all forms of monetary relief to which Class Members are or might be entitled under this Agreement, including all unpaid wages, overtime, penalties, fines, liquidated damages, interest, taxes (including Employer Payroll Taxes), claims administration fees, court costs and any other costs whatsoever, any and all amounts to be paid to or on behalf of Class Members, any Court-approved Named Plaintiff Service Awards and/or Opt-In Service Awards, and Settlement Claims Administrator's fees and costs.  However, Friendly's separately agrees to pay Court-approved attorneys' fees and costs of Class Counsel of up to One Million One Hundred Thousand Dollars ($1,100,000.00).

1.28    **Mediator.**  "Mediator" means Hunter R. Hughes, Esq.

1.29    **Named Plaintiffs**.  "Named Plaintiffs" means Tisha Reed, Natasha Walker, and Kaylee Metz.

1.30    **Named Plaintiff Service Awards**.  "Named Plaintiff Service Awards" means the service award payment that each Named Plaintiff is eligible to receive, in an amount not to exceed Ten Thousand Dollars ($10,000.00) for Named Plaintiff Tisha Reed and Seven Thousand Five Hundred Dollars ($7,500.00) each for

Named Plaintiffs Natasha Walker and Kaylee Metz, all of which are subject to Court approval.

1.31   **Net Settlement Payment**.   "Net Settlement Payment" means the sum of the Friendly's Net Settlement Payment and the TICC Net Settlement Payment.

1.32   **Notice**.   "Notice" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing, the form of which is attached as Exhibit A.

1.33   **Objector**.   "Objector" means an individual who files an objection to this Agreement in accordance with Section 2.7, below.

1.34   **Opt-In Plaintiffs.** "Opt-In Plaintiffs" means Darrell Costley, Carly Dillon, Olivia Germuth, Karen Henry, Tron Hodges, Kerri Anne Kraemer, Mitchell Mendoza, Caitlyn Rohrbaugh, Kendra Snyder, Katherine Sterner, Keighley Taylor, Kolton Wansel, Stephanie Wade, Amy Inskip, Samantha Montz, and Lori Rosenberry.

1.35   **Opt-In Service Awards** "Opt-In Service Awards" means the service award payment that each Opt-In Plaintiff is eligible to receive, in an amount not to exceed Two Thousand Dollars ($2,000.00) per Opt-In Plaintiff, all of which are subject to Court approval.

1.36   **Opt-out Period.**  "Opt-out Period" means the sixty (60) day period after the date on which the Settlement Claims Administrator mailed the Notice and Claim Form to the Class Member.

1.37   **Opt-out Statement**.  "Opt-out Statement" means the writing described in Section 2.6, below.

1.38   **Participating Class Members**.  "Participating Class Members" means all Friendly's Participating Class Members and all TICC Participating Class Members.

1.39   **Parties**.  "Parties" means, collectively, Named Plaintiffs, Opt-in Plaintiffs, all Class Members, and Defendants.

1.40   **Plaintiffs.**  "Plaintiffs" means, collectively, Named Plaintiffs, Opt-in Plaintiffs, and all Class Members

1.41   **Preliminary Approval Motion**.  "Preliminary Approval Motion" means the motion for preliminary approval of the parties' settlement as set forth this Agreement pursuant to Section 2.3

1.42   **Preliminary Approval Order**.  "Preliminary Approval Order" means the Order described in Section 2.3 of this Agreement and which when entered by the Court

will preliminarily approve the terms and conditions of this Agreement, and direct the manner and timing of providing Notices to the Class Members.

1.43    **Qualified Settlement Fund or QSF**.  "Qualified Settlement Fund" or "QSF" means the account and any subaccounts established thereunder by the Settlement Claims Administrator pursuant to Section 2.2, below.

1.44    **Release. "**Release" means the Release provisions in Section 4.1, below.

1.45    **Released Parties**.  The "Released Parties" means Defendants and each of their parents, divisions, affiliates, subsidiaries, predecessors, successors, and their present and former officers, directors, shareholders, members, managers, employees, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, payroll services providers, consultants, insurers, successors and assigns, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity which could be jointly liable with any of them, provided, however, that the term "Released Parties" does not include Friendly's independent franchisee, with the exception of TICC, which is a Released Party under this Agreement notwithstanding that it is a franchisee.

1.46    **Reminder Notice**.  The "Reminder Notice" means the Court-approved Reminder Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing, which will be a postcard in the form attached as Exhibit C.

1.47    **Server.** "Server" means any Friendly's Server or TICC Server.

1.48    **Service Awards.**   "Service Awards" means Named Plaintiff Service Awards and Opt-in Plaintiff Service Awards.

1.49    **Settlement Claims Administrator**.  The "Settlement Claims Administrator" will be RG2 Claims Administration LLC, which was jointly selected by Plaintiffs' Counsel and Friendly's Counsel to administer this settlement and, with the Parties' assistance, to perform all tasks necessary to effectuate this Agreement.

1.50    **Settlement Checks**.  "Settlement Checks" means checks issued to Participating Class Members for their share of the Friendly's Net Settlement Payment and TICC's Net Settlement Payment calculated in accordance with this Agreement.

1.51    **TICC.**  "TICC" means TICC, Inc.

1.52    **TICC Class Member**.  "TICC Class Member" means any person currently or formerly employed by TICC as a TICC Server in a TICC Store during the TICC Class Period.

1.53    **TICC Class Period.**  The "TICC Class Period" means that period beginning on August 28, 2012, and continuing up to and including the date of the entry of the

Preliminary Approval Order.  The TICC Class Period is the same for purposes of the FLSA collective and the Pennsylvania wage and hour class.

1.54    **TICC Counsel**.  "TICC Counsel" means James L. Griffith, Jr., and Harris Chernow, both of the law firm Reger, Rizzo & Darnall, LLP, Cira Centre, 13th Floor, 2929 Arch St., Philadelphia, PA    19104, (215) 495-6510, jgriffith@regerlaw.com, hchernow@regerlaw.com.  All notices required by this Agreement to be directed to TICC Counsel shall be directed to both Mr. Griffith and Mr. Chernow.

1.55    **TICC Maximum Settlement Payment**.  "TICC Maximum Settlement Payment" means the gross total of Thirty Five Thousand Dollars ($35,000).   Under no circumstances will TICC be required to pay more than the "TICC Maximum Settlement Payment" in connection with, and for purposes of making the payments allowable under, this Settlement Agreement.

1.56    **TICC Net Settlement Payment.**  "TICC Net Settlement Payment" means first that portion of the TICC Maximum Settlement Amount and second that portion of the TICC Allocation of the Friendly's Maximum Settlement Payment that is necessary to pay the valid claims of TICC Participating Class Members as determined in accordance with Section 3.6 and other applicable provisions of this Agreement. TICC and Friendly's shall fund the TICC Net Settlement Payment as follows: If the Settlement Claims Administrator determines that the dollar amount of valid claims of TICC Participating Class Members (a) is less than $35,000, then TICC shall fund the QSF (or subaccount thereof) with that portion of the TICC Maximum Settlement Payment that is necessary to pay those valid claims; (b) is equal to $35,000, then TICC will fund the QSF (or subaccount thereof) with the TICC Maximum Settlement Payment; or (c) is greater than $35,000, then TICC will fund the QSF (or subaccount thereof) with the TICC Maximum Settlement Payment, and Friendly's will fund the QSF in the amount necessary to pay the balance of valid claims of TICC Participating Class Members. The nature of the calculations, including the inclusion of TICC Allocation of the Friendly's Maximum Settlement Payment, is being done for fairness and is not an admission of any liability, including liability under any joint employer theory.

1.57    **TICC Participating Class Member**.  "TICC Participating Class Member" means a TICC Class Member who submits a valid Claim Form in accordance with Section 2.5 and who does not submit a valid Opt-Out Statement.

1.58    **TICC Server**.  "TICC Server" means any person currently or formerly employed by TICC in a server capacity in a TICC Store during the TICC Class Period whose work time was recorded using the Crew 1/server category in TICC's time-keeping system.  For purposes of this Agreement, status as a TICC Server (and the number of hours worked as a TICC Server) will be determined by TICC's payroll records. If TICC's records show a TICC employee worked as a TICC Server and in other jobs on the same day or on different days, then only the hours

spent working as a TICC Server will be counted for purposes of determining the TICC Server's share of the Settlement.

1.59   **TICC Store.**  "TICC Store" means a licensed Friendly's® restaurant/store owned and operated by TICC during the TICC Class Period.  TICC Store does not mean or include any restaurant(s)/store(s) owned and operated by Friendly's or by any other franchisee(s).

## 2.   APPROVAL AND CLASS NOTICE

2.1   **Binding Agreement**.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to fully and finally settle the Action and to seek Court approval thereof.

2.2   **Retention of the Settlement Claims Administrator**.  The Settlement Claims Administrator RG2 Claims Administration LLC has been jointly selected by Friendly's Counsel and Class Counsel.  The Settlement Claims Administrator will be responsible for locating Class Members through commercially reasonable efforts; printing and mailing Notices and Claim Forms to Class Members in accordance with the Court's Preliminary Approval Order; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks or hours worked and settlement share amounts; reporting on the state of the settlement, as set forth in this Agreement, to the Parties; providing notice as required under the Class Action Fairness Act; distributing Named Plaintiff Service Awards and Opt-In Service Awards; calculating the Settlement Checks in accordance with the Court's Final Approval Order; distributing Settlement Checks to Class Members and withholding Class Members' share of taxes, including calculating Class Members' share of taxes and Employer Payroll Taxes; remitting such withheld funds to the appropriate taxing authorities; preparing a declaration regarding the Settlement Claims Administrator's due diligence in the claims administration process; providing Defendants' Counsel and Class Counsel with information requested related to the administration of the settlement upon request; creating and qualifying the monies paid by Defendants pursuant to this Agreement  as a Qualified Settlement Fund under Section 468B of the IRC of 1986 and Treas. Reg. 1.468B-1 *et seq*.; demonstrating before undertaking any of the foregoing that the Claims Administrator has security protocols and measures to guard against theft or loss of, or unauthorized access to, Class Members' personal identifying information (such as name and social security numbers), and further demonstrating that it has procured insurance sufficient to cover any costs, losses, or damages arising from any such theft, loss, or unauthorized access; and performing such other duties as the Parties may jointly direct or as are specified herein.

(A)   The Settlement Claims Administrator has represented that it will fully, completely and competently perform all duties required to administer the settlement for an amount "not to exceed $50,000."  Thus, in no event will

an amount above $50,000 be deducted from the Maximum Settlement Amount, or obtained from the attorneys' fees and costs, or separately provided by any Party for payment to the Settlement Claims Administrator.

(B)    Class Counsel and Defendants' Counsel will have access to the Settlement Claims Administrator, which shall provide Class Counsel and Defendants' Counsel with the information necessary to properly administer the settlement and enable Class Counsel to respond to inquiries from Class Members.   The Settlement Claims Administrator will provide weekly reports to the Parties regarding the status of the mailing of the Notices and Claim Forms to Class Members, the claims administration process (including the number of Opt-out Statements received, and well as the percentage of the Friendly's Net Settlement Payment and TICC Net Settlement Payment that was apportioned to the Class Members who submitted Opt-out Statements), the substance and status of disputes raised by Class Members regarding the calculation of settlement awards, and distribution of the Settlement Checks.

(C)    In the event of a dispute regarding the calculation of a Class Member's Settlement Check or a Class Member's workweeks or hours worked, the Settlement Claims Administrator shall promptly report the nature of the dispute to Class Counsel and Defendants' Counsel for the respective employer, who will confer in good faith with the Settlement Claims Administrator in an effort to resolve the dispute.   In the event Class Counsel and Defendants' Counsel are unable to reach agreement, the Settlement Claims Administrator shall decide the dispute, and its decision shall be final and binding on the Parties.

(D)    Defendants agree to cooperate with the Settlement Claims Administrator, provide (to the extent reasonably available) accurate information necessary to calculate the amount(s) of the Settlement Checks, and provide commercially reasonable assistance to the Settlement Claims Administrator in locating Class Members.

(E)    The Settlement Claims Administrator, in conjunction with Defendants' Counsel and Class Counsel, will take all necessary measures to create and qualify the Qualified Settlement Fund as a qualified settlement fund under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. 1.468B-1 *et seq.*   The Settlement Fund shall be established as an interest bearing account.

## 2.3    Preliminary Approval Motion.

(A)    Class Counsel will submit to Defendants a draft preliminary approval motion, including a proposed Notice, proposed Claim Form, proposed

Reminder Notice, and proposed Preliminary Approval Order.  Defendants will review and make any revisions to this motion within a reasonable time after receipt from Class Counsel.  After good-faith consideration of Defendants' revisions, Class Counsel will file the final Preliminary Approval Motion.

(B)     The proposed Preliminary Approval Order will include the findings required by the laws and rules applicable to wage and hour claims in the states of Connecticut, Florida, Massachusetts, Maine, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Virginia, and Vermont, as well as the findings required for an FLSA collective action. The preliminary approval motion also will ask the Court to set the date for individuals to opt-out of this Agreement or provide objections to this Agreement, which date will be (60) days from the mailing of the Notice to the Class Members.

(C)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a Final Approval Order and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate, and reasonable; (2) approve the settlement payments to Participating Class Members; (3) incorporate the terms of the Release, as described herein; (4) finally certify the FLSA collective and the state law class(es);  (5) dismiss the Action with prejudice; (6) award Class Counsel fees and costs in the amount(s) deemed appropriate by the Court; (7) award the Named Plaintiff Service Awards in the amount(s) deemed appropriate by the Court; and (8) award Opt-In Service Awards in the amount(s) deemed appropriate by the Court.  Defendants will not oppose the Preliminary Approval Motion, provided that Defendants' counsel has approved the motion as set forth herein

(D)     If the Court denies the Preliminary Approval Motion, then Sections 5.2 and 5.3 of this Agreement will apply.

(E)     The Parties will work together, diligently and in good faith, to obtain a Preliminary Approval Order, Final Approval Order, and Judgment of Dismissal.

**2.4     Notice to Class Members.**

(A)     Within fifteen (15) days after the Court's issuance of a Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator with the following information for each of their respective Class Members in electronic form: name, Social Security Number, last known address, date of hire, date of termination, state in which Class Member worked, and number of workweeks or hours that Class Member

worked as a Server within the Class Period as that information exists in Defendants' respective business and/or payroll records ("Class List").

(B)     Within twenty-five (25) days after the Court's issuance of a Preliminary Approval Order, the Settlement Claims Administrator will mail to all Class Members, *via* United States Mail, postage prepaid, the applicable Court-approved Notice and Claim Form.

(C)     Within thirty (30) days after the Settlement Claims Administrator's mailing of the Notices and Claim Forms, the Settlement Claims Administrator will send, *via* U.S. Mail, a Reminder Notice in the form attached hereto as Exhibit C to those Class Members who have not returned a valid Claim Form.

(D)     The Settlement Claims Administrator will take commercially reasonable steps to obtain the correct address of any Class Member for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in this Agreement.   The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5     Eligible and Participating Class Members.**

(A)     To be eligible for a Settlement Check, a Class Member must return a valid Claim Form to the Settlement Claims Administrator.   To be valid, the Class Member must (1) provide all of the information requested in the Claim Form in a legible manner; (2) sign the Claim Form under penalty of perjury, and provide the date on which the Class Member signed the Claim Form; and (3) return the Claim Form to the Settlement Claims Administrator *via* First Class U.S. Mail, postage prepaid, in an envelope postmarked no later than sixty (60) days after the date on which the Settlement Claims Administrator mailed the Notice and Claim Form to the Class Member.

(B)     If the Settlement Claims Administrator determines that a Claim Form does not comply with Section 2.5(A)(3), then the Class Member shall not be eligible for the opportunity to cure described in this Section 2.5(B).   If the Settlement Claims Administrator determines that a Class Member's Claim Form is timely under Section 2.5(A)(3), but otherwise invalid, then the Settlement Claims Administrator shall provide  the affected Class Member with written notice of the basis for the Claim Administrator's decision to invalidate the claim, along with any supporting documents and/or information relied upon by the Settlement Claims Administrator ("Cure Notice").   The Cure Notice shall provide the affected Class Member with

a period (which, in the discretion of the Settlement Claims Administrator, shall be up to but not more than twenty (20) days (hereafter, "Cure Period") to cure the deficiencies identified in the Cure Notice. The corrected Claim Form must be returned to the Settlement Claims Administrator *via* First Class U.S. Mail, postage prepaid, in an envelope postmarked no later than the end of the Cure Period. If the corrected Claim Form is timely, the Settlement Claims Administrator will then determine if the corrected Claim Form is valid. There shall be only one opportunity to cure. In the event that any dispute regarding the validity or amount of that Class Member's claim thereafter remains, that dispute will be resolved by the Settlement Claims Administrator pursuant to Section 2.2(C), whose decision shall be final.

**2.6    Class Member Opt-outs.**

(A)    Class Members who want to opt-out of the Settlement must submit a valid Opt-out Statement. To be a valid Opt Out Statement, the Class Member must (1) prepare a writing that (a) legibly identifies the Class Member's name, address, social security number, telephone number, and, if available, email address, (b) contains the statement "I want to opt out of the Friendly's-TICC Server Settlement," (c) is signed by the Class Member, and (d) legibly identifies the date on which the Class Member signed the writing; and (2) mail the Opt-out Statement to the Settlement Claims Administrator *via* First Class U.S. Mail in an envelope that is postmarked no later than sixty (60) days after the date on which the Settlement Claims Administrator mailed the Notice and Claim Form to the Class Member.

(B)    If a Class Member's Notice is returned to the Settlement Claims Administrator as undeliverable, then the Settlement Claims Administrator, if able to identify an alternate address, shall re-send the Notice. The Class Member will be allowed to opt-out or object up to ten (10) days from the date of the second mailing, but in no event later than sixty (60) days after the date on which Settlement Claims Administrator mailed the original Notice.

(C)    The Settlement Claims Administrator shall keep accurate records of the dates on which it sends or re-sends Notices to Class Members. If requested by Class Counsel and/or Defendants' Counsel, the Settlement Claims Administrator will certify the date(s) it mailed any Notice, Claim Form, or Reminder Notice, said certification to be in a form and manner acceptable to the Counsel requesting it.

(D)    The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than two (2) days after receipt thereof. The Settlement Claims

Administrator will also, within two (2) days after the end of the Opt-out Period, send copies of all such stamped Opt-out Statements to Defendants' Counsel and Class Counsel.  The Settlement Claims Administrator will, within two (2) days after the end of the Opt-out Period, send a final list of all valid Opt-out Statements to Class Counsel and Defendants' Counsel by e-mail.  The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Class Member who timely submits a Claim Form, and who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, as set forth in this Agreement.  If a Class Member submits a Claim Form and an Opt-out Statement, the Settlement Claims Administrator shall promptly attempt to contact the Class Member to determine the Class Member's true intention.  If the Class Member does not clarify his or her true intention in writing within seven (7) days before the Final Approval Hearing, the Opt-out Statement shall be deemed valid and the Claim Form shall be deemed invalid.

**2.7     Objections to Settlement.**

(A)     Any Class Member who wishes to object to the Settlement and to have his/her objection considered by the Court must comply with the following:

(1)     The Class Member must not have opted-out of the Settlement.

(2)     The Class Member must have timely submitted a valid Claim Form.

(3)     The objection must be in writing and signed by the Class Member. The written objection must include the words, "I object to the settlement in the Friendly's/TICC Server Action," as well as all reasons for the objection.  Any reasons not included in the written objection will not be considered.  The written objection must also include the name, address, and telephone numbers of the Class Member making the objection.  If the Class Member wants to appear, speak, and/or present evidence at the Fairness Hearing in support of his or her objection, then the writing must also comply with Section 2.7(B), below.

(4)     The written objection must be mailed to the Settlement Claims Administrator *via* First-Class United States Mail, postage prepaid, and be postmarked no later than sixty (60) days after the date that the Settlement Claims Administrator mailed the Notice to the Class Member.

(B)    A Class Member who files objections to the settlement ("Objector") may be able to appear and participate in the Fairness Hearing in support of the objection either in person or through counsel hired by the Objector provided that the Objector and/or the Objector's counsel complies with the provisions of 2.7 (A)(1) – (A)(4).  An Objector who wishes to appear or speak at the Fairness Hearing must state his or her intention to do so in writing by including the words "I request permission to appear and speak at the fairness hearing" in his or her written objection.  If an Objector does not comply with this provision, the Objector may be precluded from speaking at the Fairness Hearing.  No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this Section 2.7.  No Class Member will be eligible to present an objection at the Fairness Hearing based on a reason not stated in his or her written objection.  A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)    The Settlement Claims Administrator will stamp the date the objection was received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than two (2) days after receipt thereof.   The Settlement Claims Administrator will file the date-stamped originals of any and all objections with the Court within two (2) days after receipt thereof.  The Parties may file with the Court written responses to any Objector's objections no later than three (3) days before the Fairness Hearing.

(D)    An Objector may withdraw his or her objection(s) at any time.

**2.8**    **Motion for Judgment and Final Approval**.  Not later than fifteen (15) days before the Fairness Hearing, Class Counsel, on behalf of Plaintiffs, will submit to Defendants' Counsel a draft Motion for Judgment and Final Approval. Defendants will review and make any revisions to the draft Motion for Judgment and Final Approval, and return it to Class Counsel, within seven (7) days after receiving the draft Motion for Judgment and Final Approval from Class Counsel. Class Counsel shall in good faith consider Defendants' revisions.

**2.9**    **Entry of Judgment**.  At the Fairness Hearing, the Parties will request that the Court issue a Final Approval Order to confirm the proposed findings in the Motion for Preliminary Approval (see Section 2.3) and to, among other things, (a) certify the classes pursuant to Rule 23 for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 2.6 of this Agreement, (d) finally certify the FLSA collective; (e) approve the FLSA settlement; and (e) dismiss the Action with prejudice.

**2.10    Failure to Approve**.    If the Court declines to give final approval in a Final Approval Order to the Settlement or to grant the Motion for Judgment and Final Approval, then Sections 5.2 and 5.3 of this Agreement shall apply.

**3.    SETTLEMENT TERMS AND ADMINISTRATION**

**3.1    Settlement Amount.**    Subject to the terms hereof, Defendants' respective shares of the Maximum Settlement Amount, which shall not be increased, are as follows: the Friendly's Maximum Settlement Amount, up to Three Million Five Hundred Thousand Dollars ($3,500,000.00), to be paid by Friendly's; and the TICC Maximum Settlement Amount, up to Thirty Five Thousand Dollars ($35,000.00), to be paid by TICC.   The Maximum Settlement Amount will constitute the total amount paid by Defendants in connection with and for payments made pursuant to this Agreement, excluding court-approved attorneys' fees and costs, but including but not limited to payments for any or all of the following:

(A)    claims made by and payments to any Class Member (including Employer Payroll Taxes);

(B)    any Named Plaintiff Service Awards that may be approved by the Court;

(C)    any Opt-In Service Awards that may be approved by the Court; and

(D)    the Settlement Claims Administrator's fees and costs (not to exceed $50,000.00).

(E)    Under no circumstances will Defendants be required to pay more than their respective share of the Maximum Settlement Amount of Three Million Five Hundred Thirty-Five Thousand Dollars ($3,535,000.00), except that Friendly's will separately pay the court-approved attorneys' fees and costs described in this Agreement.

**3.2    Attorneys' Fees and Costs.**

(A)    In the Motion for Final Approval and at the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees and costs in the amount of One Million One Hundred Thousand Dollars ($1,100,000.00).   Defendants will not oppose a fee application that seeks this amount or less.

(B)    The application for attorney's fees and costs was negotiated separately from the Maximum Settlement Amount and not until after the Maximum Settlement Amount was agreed upon.   The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action.   The outcome of any proceeding related to Class Counsel's application for attorneys' fees and

costs shall not terminate or provide any basis for terminating this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

(C )    No later than five (5) days after the Effective Date, Friendly's shall submit to the Settlement Claims Administrator the amount awarded by the Court in attorney's fees and costs to fund the QSF (or any subaccount thereof).

(D)     No later than one (1) day after the Effective Date, Plaintiffs' counsel will provide the Settlement Claims Administrator with a completed W-9 Form for the attorneys' fees and costs payment.  No later than seven (7) days after the Effective Date, the Settlement Claims Administrator will disburse from the QSF the amount approved for attorneys' fees and costs to Plaintiffs' Counsel by initiating a wire transfer to a trust fund to be identified in due course.

**3.3    Portion of Settlement Amount Payable as Service Awards.**

(A)     In return for the risks they incurred and the services they rendered to the Class Members, at the Fairness Hearing Named Plaintiff Reed will apply to the Court for a Ten Thousand Dollar ($10,000.00) Named Plaintiff Service Award, Named Plaintiffs Walker, and Metz will each apply to the Court for a Seven Thousand Five Hundred Dollar ($7,500.00) Named Plaintiff Service Award, and the Opt-In Plaintiffs will each apply to the Court for a Two Thousand Dollar ($2,000.00) Opt-In Service Award.  All such awards will be paid from the Friendly's Maximum Settlement Amount.  Named Plaintiffs and Opt-In Plaintiffs are eligible for only one Service Award each, regardless of whether they may have claims against more than one Defendant.  Defendants will not oppose these applications. Each recipient of a Named Plaintiff Service Award or Opt-In Service Award agrees to execute a separate settlement agreement and general release of claims to be prepared by Defendants, forms of which are attached hereto as Exhibit D1 (for Named Plaintiffs and Opt-in Plaintiffs who formerly worked only for Friendly's), D2 (Opt-in Plaintiffs who currently work only for Friendly's) and D3 (for Metz who worked for both Friendly's and TICC).

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action.  The outcome of the Court's ruling on the application for the Named Plaintiff and Opt-In Service Awards will not terminate this Agreement or provide any basis for terminating the Agreement, or otherwise affect the Court's ruling on the Motion for Final Approval.

3.4     **Portion of Settlement Amount Payable as Settlement Claims Administrator's Fees and Costs.**  At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of approval of the Settlement Claims Administrator's fees and costs (not to exceed $50,000.00) to be paid from the Friendly's Maximum Settlement Amount.

3.5     **Friendly's Net Settlement Payment and Allocation to Class Members Employed by Friendly's.**

   (A)     Payments to Friendly's Participating Class Members (in the form of a Settlement Check) shall be made from the Friendly's Net Settlement Payment.

   (B)     The approximate amount of a Friendly's Participating Class Member's Settlement Check will be determined by the Settlement Claims Administrator pursuant to the following formula:

$$\text{Class Member's Settlement Check} = \$3,197,713 \times \frac{\text{Total weeks Class Member worked in Friendly's Class Period}}{\text{Total weeks worked by all Friendly's Class Members in Friendly's Class Period}}$$

   Irrespective of the formula set forth above, no Friendly's Participating Class Member will receive less than $25.00.  In the event that a Friendly's Participating Class Member's share, after the combination of the Friendly's Class Member's settlement amounts from all applicable categories, is less than $25.00, he will receive additional compensation to bring his share up to $25.00 and all other Friendly's Participating Class Members' settlement amounts will be reduced on a pro rata basis to account for the minimum threshold amount.

   (C)     In no event shall the amount contributed by Friendly's to the QSF under Sections 3.3 through 3.6 exceed the Friendly's Maximum Settlement Payment, except for the separate payments for attorneys' fees and costs, pursuant to Section 3.2.

   (D)     The $3,197,713 figure used in the formula in Section 3.5(B) is estimated and subject to Court approval of the Settlement Claims Administrator fees and the Service Awards.

3.6     **TICC Net Settlement Payment and Allocation to TICC Class Members.**

   (A)     Payments to TICC Participating Class Members (in the form of a Settlement Check) will be made from the TICC Net Settlement Payment.

(B)   The amount of a TICC Participating Class Member's Settlement Check will be determined by the Settlement Claims Administrator pursuant to the following formula:

Class Member's Settlement Check = \$224,255   x   $\dfrac{\text{Total hours Class Member worked in TICC Class Period}}{\text{Total hours worked by all TICC Class Members in TICC Class Period}}$

Irrespective of the formula set forth above, no Participating TICC Class Member will receive less than \$25.00. In the event that a TICC Participating Class Member's share, after the combination of the TICC Class Member's settlement amounts from all applicable categories, is less than \$25.00, he will receive additional compensation to bring his share up to \$25.00 and all other TICC Participating Class Members' settlement amounts will be reduced on a pro rata basis to account for the minimum threshold amount.

(C)   In no event shall the amount contributed by TICC to the QSF exceed the TICC Maximum Settlement Payment.

(D)   The \$224,255 figure used in the formula in Section 3.6(B) is estimated and subject to Court approval of the Settlement Claims Administrator fees and the Service Awards.

**3.7**   **Tax Characterization**.

(A)   Solely for tax purposes and not as an admission of liability or otherwise, 50% of payments to Class Members pursuant to Sections 3.5 and Section 3.6 shall be treated as back wages; and 50% of payments to Class Members pursuant to Sections 3.5 and Section 3.6 shall be treated as interest, liquidated damages, and/or penalties paid pursuant to the Agreement.

(B)   Payments treated as back wages shall be subject to all applicable employment taxes, including without limitation federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security Number on an IRS Form W-2. Payments treated as interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's Social Security Number on IRS Form 1099. Payments of attorneys' fees and costs shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Payments made as Service Awards shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and Social Security

Number on an IRS Form 1099.  The Settlement Claims Administrator will issue all relevant taxation documents, including W-2 and 1099 forms.

(C)     As described above, all state and federal payroll taxes imposed by applicable law, including Employer Payroll Taxes will be paid out of the amount of the respective Friendly's Net Settlement Payment and TICC Net Settlement Payment.

(D)     With the exception of Employer Payroll Taxes, each Participating Class Member receiving a Settlement Check or Service Award is responsible for any and all applicable taxes (including but not limited to income taxes and the employee portion of payroll taxes), interest, and penalties due with respect to each such payment.

(E)     No opinion or advice concerning the tax consequences to any individual Class Member is being given or will be given by Class Counsel, Friendly's Counsel, TICC Counsel, or any Released Party; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.   Except as set forth in this Settlement Agreement, the Released Parties assume no liability whatsoever to any local, state, or federal taxing authority or to any Class Member for the tax consequences or treatment of the payments made under this Agreement.

**3.8     Settlement Payments to Participating Class Members.**

(A)     No later than five (5) days after the Effective Date, Friendly's shall submit Friendly's Net Settlement Payment and TICC and Friendly's shall submit their respective portions of TICC Net Settlement Payment to the Settlement Claims Administrator to fund the QSF or any subaccount thereof in accordance with this Agreement.

(B)     No later than nineteen (19) days after the Effective Date, the Settlement Claims Administrator will mail:   (1) the Settlement Checks to Participating Class Members who have timely submitted valid Claim Forms; and (2) the Named Plaintiff and Opt-In Service Award checks in the amounts approved by the Court.

(C)     Absent other instructions, the Settlement Checks issued pursuant to this Section will be mailed by the Settlement Claims Administrator to the Participating Class Member at the address listed on the Participating Class Member's Claim Form.  If a Participating Class Member's Settlement Check is returned with a forwarding address, then the Settlement Claims Administrator shall promptly re-mail the Settlement Check to the forwarding address.  If a Participating Class Member's Settlement Check is returned without a forwarding address, then the Settlement Claims Administrator will perform a Level 2 Skip Trace in a commercially reasonable manner in an effort to determine the Participating Class

Member's current address.  If a new address is obtained, then the Settlement Claims Administrator will promptly re-mail the Settlement Check to the Class Member.  If a new address is not obtained from the U.S. Post Office or through Level 2 skip tracing, then the Settlement Claims Administrator shall notify the Parties' Counsel, who will confer in good faith, on a case-by-case basis, regarding whether to instruct the Settlement Claims Administrator to conduct further traces.

(D)     If a Participating Class Member reports that his/her Settlement Check was lost, stolen, or undelivered, then the Settlement Claims Administrator shall promptly issue a stop payment order on the original check and issue a new check to such Participating Class Member.

(E)     Any Participating Class Member who does not cash his/her Settlement Check(s) within 200 days of mailing shall still be a Participating Class Member and shall be bound by all terms and conditions of this Agreement, including the Releases contained in Section 4 of this Agreement.

(F)     The Settlement Claims Administrator shall report to Class Counsel and Defendants' Counsel all checks mailed and cashed, and the dates thereof.

(G)     The Settlement Claims Administrator shall include the following release language on the back of each Settlement Check, including the checks for the Service Awards: "My signature on or negotiation of this check constitutes a full, final, and complete release by me of all Released Claims and FLSA Claims against Defendants and Released Parties, in accordance with the Joint Stipulation of Settlement and Release entered in the matter entitled *Reed v. Friendly's Ice Cream, LLC and TICC Inc.*, Civil Action No. 1:15-cv-00298-SHR."

(H)     Class Members will have two hundred (200) days from the date of mailing to negotiate (deposit or cash) their Settlement Checks (the "Acceptance Period").  Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.

(I)      Any Settlement Checks to Class Members that remain un-negotiated by the end of the Acceptance Period shall belong to Defendants, and the Claims Administrator shall return said funds represented by such un-negotiated Settlement Checks to Friendly's within 30 days following the end of the Acceptance Period.

**3.9    Settlement Payments Do Not Trigger Additional Benefits or Incentives.** All payments to Class Members shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members.  The Parties agree and the Class Members acknowledge that the payments provided for in this Agreement are the sole payments to be made to the Class Members in connection with this Agreement, the Action, and the settlement thereof, and that the Class Members are not entitled to any new, additional, or

increased Compensation/Benefits as a result of having received such payments, notwithstanding any Compensation/Benefits Plan that was or is in effect during the Class Period covered by this Settlement. The Parties further agree, and Class Members acknowledge, that this Agreement (i) does not constitute the amendment, modification, reformation, or change to any employment terms or conditions, or to any Compensation/Benefits Plan, and (ii) does not require any Released Party to amend, modify, reform, or change any employment terms or conditions, or any Compensation/Benefits Plan.

4.    **RELEASE**

4.1   **Release of Claims.**

(A)   Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Class Member who does not submit a valid Opt-out Statement shall, on behalf of himself/herself and his/her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully, finally, and forever release, remise, and discharge the Released Parties from the Released Claims for the period beginning on the date of the earliest statute of limitations applicable to the claim(s) of any Class Member until the date of entry of the Preliminary Approval Order. The "Released Claims" means any and all claims, rights, liabilities, damages, remedies, and/or relief of any kind, nature, source, or character, whether arising under federal, state, or local law, whether under statute or common law, whether at law or in equity, whether known or unknown, whether accrued or un-accrued, whether direct, consequential, or incidental, that arise out of, relate to, or are derived from any act, practice, policy, method, or omission that relate to the calculation or payment of wages or tips, including but not limited to acts, practices, policies, methods, or omissions concerning record-keeping, disclosure, notification, calculation, use, setting, payment and/or non-payment of or for any hours worked, wage rate(s), wages (whether regular hourly wages, tipped hourly wages, overtime wages or other wages), tips, tip credits, Compensation/Benefits, expense reimbursements, or taxes ("Wage and Hour Claims"); all Wage and Hour Claims that relate to or arise out of a Class Member's employment as a server with any Defendant; all claims that were asserted or could have been asserted in the Action; all claims arising under the wage and hour laws and regulations of the States of Connecticut (including but not limited to Conn. Gen. Stat. §31-58 to §31-76o); Florida (including but not limited to Florida General Labor Regulations, Fla. Stat. ch. 448); Maine (including but not limited to the Maine Employment Practices Law, Me. Rev. Stat. Ann. tit. 26, ch. 7); Massachusetts (including but not limited to the Massachusetts Labor Laws, Mass. Gen. Laws chs. 149 and 151); New Hampshire (including but not limited to the New Hampshire Labor Laws, N.H. Rev. Stat. Ann. tit. 23, chs. 275 and 279); New Jersey (including but

not limited to N.J. Stat. Ann. tit. 34, ch. 11, and N.J. Admin. Code tit. 12, chs. 55, 56, and 57); New York (including but not limited to the New York Labor Law Articles 5, 6, and 19, and the New York Compilation of Codes, Rules and Regulations tit. 12, §142-2.1 et seq. ); Pennsylvania (including but not limited to the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. §260.1 et seq., and the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Stat. §333.101 et seq.), Rhode Island (including but not limited to Rhode Island Minimum Wage Act, R.I. Gen. Laws §28-12-1 et seq.; Rhode Island Payment of Wages Law, R.I. Gen. Laws §28-14-1 et seq.), Vermont (including but not limited to Vermont Wages and Medium of Payment Law, Vt. Stat. Ann. tit. 21, §341 et seq.; Vermont Minimum Wages Law, Vt. Stat. Ann. tit. 21 §381 et seq.); Virginia (including but not limited to Virginia Labor and Employment Laws, Va. Code Ann. §40.1-1 to §40.1-51.4:5); all claims arising under the wage and hour laws, statutes, ordinances, and  regulations of any local government(s); and all claims that derive from any Wage and Hour Claim or the payments made under this Settlement Agreement (including but not limited to claims for Compensation/Benefits and/or under any Compensation/Benefits Plan).

(B)     All Named Plaintiffs, all Opt-in Plaintiffs, and all Class Members who submit a valid Claim Form in accordance with Section 2.5 of this Agreement shall, on behalf of him/herself and his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully, finally, and forever release, remise, and discharge the Released Parties from the Released Claims and the Released FLSA Claims for the period beginning on the date of the earliest statute of limitations period applicable to the claim(s) of any Class Member until the date of entry of the Preliminary Approval Order.  The "Released FLSA Claims" means all claims, rights, liabilities, damages, remedies, and relief of any kind, nature, source or character, that arise under the Fair Labor Standards Act codified at 29 U.S.C. § 201 et seq., and/or under any Department of Labor regulations, guidance, or publications (including the publication known as the Field Operations Handbook) (collectively, the Act, regulations, guidance, and publications are referred to herein as the "FLSA"), whether known or unknown, whether accrued or un-accrued, whether direct, consequential, or incidental (hereafter, the "FLSA claims"), including without limitation any FLSA claims that arise out of or relate to any Class Member's employment as a Server by either Defendant, any FLSA claims asserted in the Action, any FLSA claims that could have been asserted in the Action, and any claims that arise out of or are derived from any FLSA claim, any Wage and Hour Claim, or any of the payments under this Agreement

(including but not limited to any claim for Compensation/Benefits or under any Compensation/Benefits Plan).

(C)     For TICC Class Members, the Release provided in Section 4.1 (A) and (B) applies to both TICC and Friendly's.  Additionally, TICC Class Members specifically release and waive any claims against Friendly's and the Released Parties based on any theory of joint employment.  Friendly's Class Members who never employed by TICC (to the extent they ever had or could have any claim against TICC) shall not release claims against TICC pursuant to Sections 4.1(A) or 4.1(B) of this Agreement.

**4.2     No Admission of Liability**.  Defendants dispute Plaintiffs' claims, deny that Plaintiffs are entitled to any relief, and would zealously assert numerous factual and legal defenses in the event the Action continued. Defendants deny that they jointly or individually violated the law in any manner asserted in, alleged in, or related to the Action.  Friendly's specifically denies that it is a joint employer with TICC or any other franchisee under any law.  Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) provide substantial benefit to Defendants' business interests; (2) avoid the further expense and disruption of Defendants' business due to the pendency and expense of the Action; and (iii) put the claims in the Action finally to rest.  Nothing in this Agreement shall be deemed, construed, or used as an admission that Defendants are joint employers or as an admission of liability, culpability, negligence, wrongdoing, or unlawful conduct of any kind or nature whatsoever by or on behalf of Defendants or Released Parties, or as an admission that a class should be certified for any purpose other than settlement purposes.

**5.     Termination**.  This Settlement Agreement may be terminated as follows:

**5.1.     Opt-Out Based Termination.**

(A)     Friendly's may terminate this Agreement within seven (7) days after the expiration of the Opt-out Period if ten (10) percent or more of the Friendly's Class Members timely and properly opt-out in accordance with this Agreement.  Friendly's may exercise this right irrespective of whether TICC exercises its similar right in Section 5.1(B).

(B)     Irrespective of whether Friendly's exercises its right to terminate pursuant to Section 5.1(A), TICC may terminate this Agreement within seven (7) days after the expiration of the Opt-out Period if ten (10) percent or more of the TICC Class Members timely and properly opt-out in accordance with this Agreement.  In addition, if Friendly's exercises its termination right in 5.1(A), then TICC may, within three (3) days thereafter, terminate this Agreement.

**5.2** **Failure to Secure Approval**.  The settlement and this Agreement are contingent upon the Court's approval of the settlement and this Agreement.  If the Court fails to enter either the Preliminary Approval Order or the Final Approval Order and the Parties do not agree to seek reconsideration or appellate review of the Court's decision, or do not attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement, then the settlement and this Agreement will terminate.  In applying the preceding sentence, it is permissible but shall not be necessary to secure the agreement of all the Parties and Plaintiffs, i.e. either Defendant may elect to proceed in accordance with the preceding sentence.  The failure by the Court or an appellate court to award the full amount of the proposed Service Awards or Class Counsel's proposed attorney's fees and cost awards will not constitute failure to approve the settlement or Agreement or a material modification of the settlement or Agreement.

**5.3** **Effect of Termination.**  If this Agreement is terminated, then except as to those Parties that continue to participate in the Agreement:

(A)   This Agreement becomes null and void and no Party to this Settlement Agreement shall be bound by any of its terms except Sections 4.2 and 6.12;

(B)   The Action will proceed as if no settlement had been attempted, and the Parties shall be restored to their litigation positions as they existed just prior to August 18, 2016, with each reserving the right to prosecute or defend the Action, claims, contentions, and demands for relief as they see fit and as the Court may allow; and with Defendants specifically reserving the right to contest whether the Action should proceed as a class and/or collective action;

(C)   Defendants will have no obligation to fund the QSF or to pay any sums whatsoever in connection with this Settlement Agreement;

(D)   Any state or FLSA classes certified (preliminarily or otherwise) for settlement purposes only shall be decertified without prejudice;

(E)   Plaintiffs shall withdraw the Third Amended Complaint;

(F)   The Settlement Claims Administrator will promptly mail a notice to Class Members informing them that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement;

(G)   Friendly's and Plaintiffs agree to evenly split the Settlement Claims Administrator fees and costs incurred through the termination date;

(H)     This Agreement (including Exhibits) will not be used for any purpose in connection with the Action, any future action, or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint, expect that the non-disclosure obligations in Section 6.12 below will remain in effect; and

(I)     The Parties shall request that the Court re-calendar the Action.

6.      **INTERPRETATION AND ENFORCEMENT**

6.1     **Cooperation Between the Parties; Further Acts**.  The Parties shall reasonably cooperate with each other and shall use their reasonable efforts to effectuate this Agreement, including during any appeals, and to obtain the Court's approval of this Agreement and all of its terms and to defend this Agreement and the settlement from any legal challenge.  Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.  The Parties will fully cooperate with each other and with the Settlement Claims Administrator to accomplish, implement, and effectuate the terms of this Agreement, including but not limited to the preparation and execution of documents necessary to implement this Agreement.

6.2     **No Assignment**.  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including but not limited to any interest in the Action or any related action.

6.3     **Entire Agreement**.   This Agreement constitutes the entire, complete, and integrated agreement between the Parties with regard to the subject matter contained herein, including all settlement terms, and supersedes all previous oral or written agreements (including the summary of settlement terms executed at the mediation), and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.   This Agreement may not be amended or modified except by a writing signed by the Parties or their duly authorized representatives.   Agreements solely between Friendly's and TICC to which Plaintiffs are not parties are not subject to this provision.

6.4     **Binding Effect.**   This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, the Opt-In Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees, attorneys, successors, and assigns.

6.5     **Arms' Length Transaction; Materiality of Terms**.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length with the assistance of the Mediator.  All terms and conditions of this Agreement in the exact form set

forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.6     **Captions**.  The captions or headings in this Agreement have been inserted for convenience or reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.7     **Construction.**  The Parties mutually agreed to and determined the terms and conditions of this Agreement.  Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

6.8     **Blue Penciling/Severability**.  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, with the exception of the release contained herein, such finding shall not affect the validity of the remaining portions of this Agreement, which will remain in full force and effect and will be construed and enforced to effect the purposes thereof to the fullest extent permitted by law.

6.9     **Governing Law**.  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the Commonwealth of Pennsylvania, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.10    **Reference of Disputes to Mediator.**

The Parties agree that, in the event of any dispute arising out of the settlement or this Agreement, they shall first make a good faith effort to resolve it on their own. If they are unable to resolve the dispute, the Parties will attempt in good faith to resolve any such dispute before the Mediator.  In the event that the Mediator determines that he is unable to resolve any such dispute, then the Parties agree that the Court and the appropriate appellate courts shall have exclusive jurisdiction to hear and resolve any dispute.

6.11    **Waivers, etc. to Be in Writing**.  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any Party to insist upon the strict performance by another Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**6.12    Non-Disclosure and Publicity**.

(A)    Prior to submission of the Agreement to the Court for preliminary approval, the Parties and their counsel will keep the terms, conditions, and existence of the settlement and this Agreement strictly confidential, and will not contact, or comment to, the media about the settlement or this Agreement, or disclose, make known, discuss, or relay orally or in writing, electronically or otherwise, the existence or terms of the settlement or this Agreement, or any information concerning or discussions leading up to the settlement or this Agreement.  After submission to the Court of the Motion for Preliminary Approval, neither Named Plaintiffs, Class Counsel, Defendants, nor Defendants' Counsel, may make any public comment, make or have any communications to or with the press or media, or make any form of advertising or public announcement, utilize any form of social media or website, or issue any press release or media release, regarding the terms of this Agreement, except that a settlement has been reached and the settlement amount.  Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings a summary of the terms of this Agreement.

(B)    Any communication about the settlement to Class Members prior to the Court-approved mailing will be limited to a statement that a settlement has been reached and that the details will be communicated in a forthcoming Court-approved notice.  In the event that a Named Plaintiff or Opt-In Plaintiff is asked about the settlement, they will direct such inquiry to Class Counsel.

(C)    Nothing in this Agreement shall prohibit Class Counsel or Defendants' Counsel from disclosing information concerning this Agreement to the Settlement Claims Administrator, their employees, or their agents to effectuate the terms of this Agreement.  Moreover, nothing in this Agreement shall prohibit Defendants from disclosing information concerning this Agreement to their employees or agents to the extent necessary to effectuate the terms of this Agreement or to other individuals who otherwise have a need to know the terms of this Agreement.  The Parties may also disclose information concerning this Agreement to their respective counsel and tax, audit, and legal advisors.

(D)    Nothing in this Agreement shall prevent Defendants or Defendants' Counsel from making any necessary, appropriate, or required disclosures to Defendants' regulators, auditors, bankers, and the like, or from complying with their obligations under the law.

(E)     Class Counsel will promptly notify Defendants' Counsel of any third-party legal demand that they disclose information pertinent to the settlement or this Agreement.

**6.13    Return of Documents/Data.**  Class Counsel will destroy all documents produced by Defendants and/or Defendants' Counsel (whether formally or for purposes of mediation) and shall delete all electronic records thereof within sixty (60) days after the Effective Date, except as required by Class Counsel's malpractice insurance and the Rules of Professional Conduct.

**6.14    When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**6.15    Signatures.**  This Agreement is valid and binding if signed by Defendants' authorized representatives and the Named Plaintiffs and Class Counsel. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated, and further agree not to request to be excluded as a Class Member and agree not to object to any of the terms of this Agreement or appeal from a Court order providing final approval to the Parties' proposed settlement.   Any request for exclusion from or objection to the settlement or this Agreement by a Named Plaintiff or Opt-In Plaintiff shall be void and of no force or effect.

**6.16    Facsimile and E-mail Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or e-mail

**6.17    Parties' Authority.**  The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Class Members to the terms and conditions thereof.

**6.18    Not All Class Member Signatures Are Required.**  Because the eligible Class Members are so numerous, it is impossible or impractical to have each one execute this Agreement. The Notice will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if this Agreement were executed by each Class Member.


**WE AGREE TO THESE TERMS,**

FIC Holdings, LLC, as successor by merger with
Friendly's Ice Cream, LLC

Dated: _Oct 9th_, 2016

By: _V. Schnable_

T. Todd Schwendenmann
Executive Vice President, CFO

TICC, Inc.

Dated: 10/12, 2016

By: _____
    Jeff Smith, President

TISHA REED

Dated: _____, 2016

_____

NATASHA WALKER

Dated: _____, 2016

_____

KAYLEE METZ

Dated: _____, 2016

_____

DAVID J. COHEN

Dated: _____, 2016

_____

STEPHAN ZOURAS, LLP, CLASS COUNSEL

JEREMIAH FREI-PEARSON

Dated: _____, 2016

_____

DocuSign Envelope ID: 220497C6-F381-449C-BF23-8863218C3DD3

T. Todd Schwendenmann
Executive Vice President, CFO


TICC, Inc.


Dated: _____, 2016              By: _____
                                       Jeff Smith, President


TISHA REED


Dated: 10/12 , 2016


NATASHA WALKER


Dated: 10/12 , 2016


KAYLEE METZ


Dated: 10/12 , 2016


DAVID J. COHEN


Dated: Oct. 12, , 2016

STEPHAN ZOURAS, LLP, CLASS COUNSEL


JEREMIAH FREI-PEARSON


Dated: Oct. 12 , 2016

FINKELSTEIN, BLANKINSHIP, FREI-
PEARSON & GARBER, LLP, CLASS COUNSEL

# EXHIBIT A

**NOTICE OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION AND
SETTLEMENT HEARING**

---

**If you are or were employed as a Server by Friendly's Ice Cream, LLC or TICC, Inc., a class
and collective action settlement may affect your rights.**

---

**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.**
The U.S. District Court for the Middle District of Pennsylvania
has authorized this Notice.  This is not a solicitation from a lawyer

This Notice has been sent to inform you of a proposed settlement of a class and collective action lawsuit and a court hearing you may choose to attend.  You may be entitled to receive a payment under the Settlement Agreement.  Your rights will be affected by the legal proceedings in this Action.  The Court will conduct a final approval hearing on [HEARING DATE] to address whether the proposed settlement should be approved.

Plaintiffs Tisha Reed, Natasha Walker, and Kaylee Metz ("Plaintiffs"), on behalf of themselves and other Servers who work, or have worked, for Friendly's Ice Cream, LLC, or its successor FIC Holdings, LLC (both referred to together as "Friendly's"), or TICC, Inc. ("TICC"; Friendly's and TICC referred to together as "Defendants") filed a lawsuit entitled *Tisha Reed, Natasha Walker, and Kaylee Metz v. Friendly's Ice Cream, LLC and TICC Inc.*, Civil Action No. 1:15-cv-00298-SHR (the "Action").  Plaintiffs asserted minimum wage and overtime claims under the federal Fair Labor Standards Act, as well as under the wage and hour laws of Connecticut, Florida, Massachusetts, Maine, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Virginia, and Vermont.  The Court has conditionally certified the suit to be a class and collective action for settlement purposes only, and you have been identified as a Class Member.  Defendants have reviewed and investigated this matter and deny any wrongdoing.  Nevertheless, Defendants have decided to resolve the Action in order to avoid the expense of litigation and the ongoing disruption to their business operations.   Plaintiffs and Defendants have entered into a Joint Stipulation of Settlement and Release ("Settlement Agreement") which is described in detail below and is available for your review as explained below.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE VALID CLAIM FORM** | If you return a Claim Form, you will receive a settlement payment.  You will also release Fair Labor Standards Act claims and any wage and hour claims under the laws of Connecticut, Florida, Massachusetts, Maine, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Virginia, and Vermont. |
| **DO NOTHING** | If you do not return the Claim Form or exclude yourself from the settlement, you will remain a party to the case, but you will not receive a payment.  You will be deemed to have released your wage and hour claims under state law, but you will retain your claims under the Fair Labor Standards Act. |

| **EXCLUDE YOURSELF** | If you make a valid and timely request to exclude yourself from the Settlement by sending a written, signed Opt-out Statement to the Claims Administrator by [EXCLUSION DEADLINE], you will not receive a settlement payment but you will retain all of the released claims subject to operation of the applicable statute of limitations. |
|---|---|
| **OBJECT** | To object you must submit a timely, valid Claim Form and a written objection to the settlement.  If you do so, you may be allowed to appear in Court and present your objection in Court at the final fairness hearing.  To receive a settlement payment you must return a valid Claim Form. |

These rights and options – and the deadlines to exercise them – are explained in this notice.

- As described more fully below, to receive a payment, you must return a properly completed Claim Form to the Claims Administrator, postmarked or received no later than [CLAIM DEADLINE].  If you fail to submit a timely Claim Form, you will receive no settlement payment, and you will still release certain claims.

- Neither Plaintiff's attorneys (also called "Class Counsel") nor Defendants make any representations concerning tax consequences of this settlement or your participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

- The Court in charge of this case still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

## 1. Why did I receive this notice?

Records indicate that you worked as a Server during the Class Period (set forth below)

The "Friendly's Class Period" means, for Servers currently and formerly employed by Friendly's at a Friendly's Store in Connecticut, Florida, Maine, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Virginia, and Vermont, the period January 1, 2013 to [PRELIMINARY APPROVAL DATE], which period is understood to encompass the applicable time period under the FLSA, except that (1) for Servers who worked in New York, Florida and Maine, the Friendly's Class Period commenced on January 9, 2012; and (3) for Named Plaintiffs, Opt-in Plaintiffs, and Servers who worked in the State of Pennsylvania, the Class Period commenced on February 11, 2012.

The "TICC Class Period" means the period beginning on August 28, 2012, and continuing up to and including [PRELIMINARY APPROVAL DATE].  The TICC Class Period is the same for purposes of the FLSA collective and the Pennsylvania wage and hour class.
The Court ordered that you be sent this notice because you have a right to know about a proposed

settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement and after objections and appeals are heard, payments will be mailed to class members who submit a Claim Form **and** do not exclude themselves. This notice explains the Action, the settlement, your legal rights, and what benefits are available.

## 2. What is this lawsuit about?

This Action alleges that Friendly's failed to pay Servers for "off-the-clock" work during unpaid meal breaks and after their scheduled shifts ("Off-the-Clock claim") and that Friendly's required Servers to spend more than 20% of their work time on non-tipped tasks unrelated to their duties as Servers, for which they received the tipped minimum wage instead of the regular minimum wage ("Non-Tipped work claim"), as well as overtime with respect to those claims. This Action alleges a Non-Tipped work claim against TICC. Friendly's and TICC deny they did anything wrong.

## 3. Why is there a settlement?

The Court has not ruled in favor of either Plaintiffs or Defendants. Both Plaintiffs and Defendants believe they would have prevailed in the case, but both sides have agreed to a settlement to avoid the cost of a trial, the risk of losing, and the delay of litigating the case and of potential appeals. The settlement also ensures that the people affected will receive compensation. The Plaintiffs and their attorneys recommend the settlement for all Class Members.

## 4. What does the settlement provide?

To avoid the burden, expense, inconvenience, and uncertainty of continuing the Action, Friendly's has agreed to pay up to a total of $3.5 million to be divided among Servers and TICC, Inc. has agreed to pay up to a total of $35,000 to be divided among Servers who worked in restaurants it owned. Current and former Servers who submit a timely, valid Claim Form will receive a settlement payment. The settlement also provides for the payment of up to a total of $63,000 in Service Payments to be divided among the three Named Plaintiffs and the first 19 Opt-In Plaintiffs, up to $1.1 million in attorneys' fees and costs and the payment of settlement administration costs.

Friendly's does not accept any responsibility for wage and hour violations at Friendly's restaurants owned by TICC.

## 5. How will my payment be calculated?

Based on a formula preliminarily approved by the Court, the settlement payment for Servers who worked for Friendly's will be calculated approximately as follows:

Payment = $3,197,713.00 x **Total weeks you worked during the Friendly's Class Period**
**Total weeks worked by all Friendly's Servers during Friendly's Class Period**

Based on a formula preliminarily approved by the Court, the settlement payment for Servers who worked for TICC will be calculated as follows:

**Payment** = $224,255.00 x <u>**Total hours you worked during the TICC Class Period**</u>
<u>**Total hours worked by all TICC Servers during the TICC Class Period**</u>

<u>The minimum settlement payment will be $25.00.</u>  Half of the payment you receive will be treated as liquidated damages or penalties and half will be treated as unpaid wages.  The liquidated damages or penalties payment will be paid to you directly, without any deductions.  The unpaid wage payment will be subject to deductions for applicable taxes and withholdings like any other paycheck.

## 6.  How can I collect my settlement payment?

To receive a payment from the settlement, you must return a properly completed Claim Form to the Settlement Claims Administrator postmarked by _____.  You may return your completed Claim Form in the enclosed pre-paid envelope provided with this Notice.  You may also mail the completed Claim Form to:

Reed v. Friendly's & TICC Settlement<br>RG2 Claims Administration LLC<br>[Address]<br>[City, State Zip]

If you return a properly completed Claim Form to the Claims Administrator by the deadline, you will be sent a settlement check if and when the Court approves the settlement and after all appeals have been exhausted.  If you choose to exclude yourself, then you will not receive a payment.

## 7.  What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself from the settlement, you will remain in the Class.  You will release all of the Released Claims (as defined in the Settlement Agreement) under the wage and hour laws of Connecticut, Florida, Massachusetts, Maine, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Virginia, and Vermont.  If you submit a timely, valid Claim Form, you will also release all Fair Labor Standards Act claims.  This means you will not be able to bring a new lawsuit or be part of any other lawsuit against Friendly's and/or TICC about the legal issues in this case.  It also means that all of the Court's rulings will apply to you and legally bind you.

The Settlement Agreement includes the following release:

**4.1**     **Release of Claims.**

(A)     Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Class Member who does not submit a valid Opt-out Statement shall, on behalf of himself/herself and his/her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully, finally, and forever release, remise, and discharge the Released Parties from the Released Claims for the period beginning on the date of the earliest statute of limitations applicable to the claim(s) of any Class Member until the date of entry of the Preliminary Approval Order.  The "Released Claims" means any and all claims, rights, liabilities, damages, remedies, and/or relief of any kind, nature, source, or character, whether arising under federal, state, or local law, whether under statute or common law, whether at law or in equity, whether known or unknown, whether accrued or un-accrued, whether direct, consequential, or incidental, that arise out of, relate to, or are derived from any act, practice, policy, method, or omission that relate to the calculation or

payment of wages or tips, including but not limited to acts, practices, policies, methods, or omissions concerning record-keeping, disclosure, notification, calculation, use, setting, payment and/or non-payment of or for any hours worked, wage rate(s), wages (whether regular hourly wages, tipped hourly wages, overtime wages or other wages), tips, tip credits, Compensation/Benefits, expense reimbursements, or taxes ("Wage and Hour Claims"); all Wage and Hour Claims that relate to or arise out of a Class Member's employment as a server with any Defendant; all claims that were asserted or could have been asserted in the Action; all claims arising under the wage and hour laws and regulations of the States of Connecticut (including but not limited to Conn. Gen. Stat. §31-58 to §31-76o); Florida (including but not limited to Florida General Labor Regulations, Fla. Stat. ch. 448); Maine (including but not limited to the Maine Employment Practices Law, Me. Rev. Stat. Ann. tit. 26, ch. 7); Massachusetts (including but not limited to the Massachusetts Labor Laws, Mass. Gen. Laws chs. 149 and 151); New Hampshire (including but not limited to the New Hampshire Labor Laws, N.H. Rev. Stat. Ann. tit. 23, chs. 275 and 279); New Jersey (including but not limited to N.J. Stat. Ann. tit. 34, ch. 11, and N.J. Admin. Code tit. 12, chs. 55, 56, and 57); New York (including but not limited to the New York Labor Law Articles 5, 6, and 19, and the New York Compilation of Codes, Rules and Regulations tit. 12, §142-2.1 et seq. ); Pennsylvania (including but not limited to the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. §260.1 et seq., and the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Stat. §333.101 et seq.), Rhode Island (including but not limited to Rhode Island Minimum Wage Act, R.I. Gen. Laws §28-12-1 et seq.; Rhode Island Payment of Wages Law, R.I. Gen. Laws §28-14-1 et seq.), Vermont (including but not limited to Vermont Wages and Medium of Payment Law, Vt. Stat. Ann. tit. 21, §341 et seq.; Vermont Minimum Wages Law, Vt. Stat. Ann. tit. 21 §381 et seq.); Virginia (including but not limited to Virginia Labor and Employment Laws, Va. Code Ann. §40.1-1 to §40.1-51.4:5); all claims arising under the wage and hour laws, statutes, ordinances, and regulations of any local government(s); and all claims that derive from any Wage and Hour Claim or the payments made under this Settlement Agreement (including but not limited to claims for Compensation/Benefits and/or under any Compensation/Benefits Plan).

(B)     All Named Plaintiffs, all Opt-in Plaintiffs, and all Class Members who submit a valid Claim Form in accordance with Section 2.5 of this Agreement shall, on behalf of him/herself and his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully, finally, and forever release, remise, and discharge the Released Parties from the Released Claims <u>and</u> the Released FLSA Claims for the period beginning on the date of the earliest statute of limitations period applicable to the claim(s) of any Class Member until the date of entry of the Preliminary Approval Order. The "Released FLSA Claims" means all claims, rights, liabilities, damages, remedies, and relief of any kind, nature, source or character, that arise under the Fair Labor Standards Act codified at 29 U.S.C. § 201 *et seq.*, and/or under any Department of Labor regulations, guidance, or publications (including the publication known as the Field Operations Handbook) (collectively, the Act, regulations, guidance, and publications are referred to herein as the "FLSA"), whether known or unknown, whether accrued or un-accrued, whether direct, consequential, or incidental (hereafter, the "FLSA claims"), including without limitation any FLSA claims that arise out of or relate to any Class Member's employment as a Server by either Defendant, any FLSA claims asserted in the Action, any FLSA claims that could have been asserted in the Action, and any claims that arise out of or are derived from any FLSA claim, any Wage and Hour Claim, or any of the payments under this Agreement (including but not limited to any claim for Compensation/Benefits or under any Compensation/Benefits Plan).

(C)     For TICC Class Members, the Release provided in Section 4.1 (A) and (B) applies to both TICC and Friendly's. Additionally, TICC Class Members specifically release and waive any claims against Friendly's and the Released Parties based on any theory of joint employment. Notwithstanding anything to the contrary, Friendly's Class Members who never worked for TICC (to the extent they ever had or could have any claim against TICC) shall not release claims against TICC pursuant to Sections 4.1(A) or 4.1(B) of this Agreement.

**8.  When will my payment arrive?**

The Court will hold a hearing on [HEARING DATE] to decide whether to grant final approval to the settlement.  If the Court approves the settlement, there may be an appeal challenging the Court's decision.  It is impossible to predict if an appeal will be taken and, if there is an appeal resolving it can take more than a year.  Please be patient.  You can contact the Settlement Claims Administrator at any time for an update on the status of the case or the settlement.

**9.  Does the settlement include any other payments?**

Yes.  Class Counsel will ask the Court to approve payment of up to $50,000.00 to the Claims Administrator, which will come from the Friendly's settlement amount.  Class Counsel will also ask the Court to approve Service Payments of $10,000.00 to Named Plaintiff Tisha Reed, Service Payments of $7,500 each to Named Plaintiffs Natasha Walker and Kaylee Metz, and Service Payments of $2,000 to each of the eleven plaintiffs who joined the lawsuit (opted in) before the settlement.   These payments are intended to compensate these individuals for their efforts in bringing and supporting the lawsuit, assisting Class Counsel, appearing for deposition, responding to discovery requests.  These payments also recognize have provided and the reputational risks they took in prosecuting this lawsuit.  These payments will come from the Friendly's settlement amount.

**10.  How do I object to the settlement?**

If you disapprove of any part of the settlement, you have the right to make an objection.  To receive a Settlement Check, you must submit a valid Claim Form, and you must not exclude yourself from the Settlement.

To submit an objection, you must send a letter to the Settlement Claims Administrator (address in Q&A 6, above) postmarked by [CLAIM DEADLINE].  You must include your name, address, telephone number, and the words: "I object to the settlement in the Friendly's/TICC Server Action." You must identify the state where you worked as a Friendly's Server.  You must sign the letter. You must identify the specific part (or parts) of the settlement you find objectionable and explain in detail all of the reasons for your objection so the Parties, their counsel, and the Court can fully understand, consider, and address your objection.

If you submit an objection to the Settlement, you may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must include the words "I request permission to appear and speak at the fairness hearing" in your written objection.  The Court will ultimately decide whether to allow you to speak at the Fairness Hearing.

If you object to the settlement, you may withdraw your objection at any time before the Fairness Hearing by sending a written request to the Settlement Claims Administrator.

**11.  How do I exclude myself from the settlement?**

To exclude yourself from the settlement, you must send a letter to the Settlement Claims Administrator (address in Q&A 6, above) postmarked by [CLAIM DEADLINE].  You must include your name, address, social security number, telephone number, and, if you have one, e-mail address,

and the words: "I want to opt out of the Friendly's-TICC Server Settlement." You must identify the state where you worked as a Friendly's Server. You must sign and date the letter.

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You will retain your rights, depending on application of the statute of limitations, to sue Friendly's (if you worked or work for Friendly's) or TICC (if you worked or work for TICC) about the legal issues in this case. If you wish to exclude yourself to file a new lawsuit against Friendly's or TICC, you should speak to a lawyer promptly because your claims are subject to a statute of limitations, which means that they will expire on a certain date.

If you exclude yourself from the settlement, you may withdraw your request at any time before the final approval hearing by sending a written request to the Settlement Claims Administrator.

## 12.  What's the difference between objecting to the settlement and excluding myself from the settlement?

Objecting is simply telling the Court that you disapprove of something about the settlement. To present an objection, you must remain in the Class. To receive a Settlement Payment, you must submit a timely and valid Claim Form. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## 13.  If I exclude myself, can I get money from this settlement?

No. If you exclude yourself from the settlement, you will not receive any money from this settlement. However, you may sue, continue to sue, or be part of a different lawsuit against Friendly's and/or TICC regarding these same claims, subject to any defenses they may have.

## 14.  If I don't exclude myself, can I sue Friendly's and/or TICC for the same thing later?

No. Unless you exclude yourself from the settlement, you give up any rights to sue Friendly's and/or TICC for the types of claims in this case. If you have a pending lawsuit against Friendly's or TICC then you should speak to your lawyer immediately to see if this settlement will affect your lawsuit.

## 15.  Do I have a lawyer in this case?

The Court has decided that the lawyers at the law firms of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Stephan Zouras, LLP are qualified to represent you and all Class Members. These lawyers are called "Class Counsel." You do not owe Class Counsel any money for their services relating to this Action or the settlement. You do not need to retain your own attorney to participate in the settlement. If you do not opt out of the Class and want to be represented by your own lawyer in connection with the settlement, you may hire a lawyer at your own expense.

## 16.  How will Class Counsel be paid?

Class Counsel accepted this case on a contingent basis, meaning they would have received nothing if the case had been lost.  Class Counsel have worked on this lawsuit since September 2014 without receiving any fees and paid all of the costs associated with this lawsuit without receiving any reimbursement.  As part of the settlement, Class Counsel will ask the Court to approve an attorney's fee and cost reimbursement payment of $1.1 million, which will come from Friendly's and represents 23.7% of the total value of the settlement.

## 17.  When and where will the Court decide whether to approve the settlement?

The Court will hold a final fairness hearing at [TIME] on [HEARING DATE] in the U.S. Federal Building and Courthouse, 228 Walnut Street, [COURTROOM] in Harrisburg, PA.

At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court may listen to people who have asked to speak at the hearing.  The Court will also consider Class Counsel's request for service awards to the Named and Opt-In Plaintiffs, the payment of attorneys' fees and costs and the payment to the Claims Administrator.  After the hearing, the Court will decide whether to approve the settlement and the requested damages, service award, fees, and cost payments.  It is impossible to predict how long these decisions will take.

## 18.  Do I have to attend the final approval hearing?

No.  The Parties and their attorneys are responsible for presenting the settlement to the Court at the final approval hearing.  You may attend the hearing at your own expense.  If you submit a timely, valid objection, the Court will consider it.  You do not have to appear at the hearing to support your objection or pay your own lawyer to attend the hearing, but you may do these things.

## 19.  Where can I get more information about the settlement?

If you have more questions about the settlement, you can request a copy of the full settlement agreement from the Claims Administrator:

RG2 Claims Administration LLC
[PHONE NUMBER]

You may also contact Class Counsel:

David J. Cohen, Esq.                      Jeremiah Frei-Pearson, Esq.
Stephan Zouras, LLP                       Finkelstein, Blankinship, Frei-Pearson & Garber, LLP
604 Spruce Street                         445 Hamilton Avenue, Suite 605
Philadelphia, PA 19106                    White Plains, New York 10601
Telephone: 312-233-1550                   Telephone: 844-431-0695
dcohen@stephanzouras.com                  jjfrei-pearson@fbfglaw.com

# EXHIBIT B

### *CLAIM FORM*

RE:    *Reed v. Friendly's Ice Cream, LLC. and TICC Inc.*, M.D. Pa. Case No. 15-cv-00298-SHR.

<<Class Member Name>>
<<Street Address>>
<<City, State Zip>>

To receive your settlement payment as set forth in the Notice of Settlement of Class and Collective Action ("Notice") and Joint Stipulation of Settlement and Release ("Settlement Agreement"), you must complete, sign, and mail this Claim Form to the following address:

Reed v. Friendly's & TICC Settlement
RG2 Claims Administration LLC
[Address]
[City, State Zip]

You may use the enclosed postage prepaid envelope or your own envelope.

**YOU MUST SUBMIT THIS CLAIM FORM BY [DATE] TO
JOIN THE CASE AND BE ELIGIBLE FOR A SETTLEMENT PAYMENT.**

By signing, dating, and returning this Claim Form, I hereby affirm that: 1) I was employed as a Server by Friendly's and/or TICC during the Class Period; 2) I agree to be bound by the Settlement Agreement negotiated by the Parties; 3) I consent to join this action under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); 4) I declare under penalty of perjury that the information provided by me on this form is true and correct; and 5) I agree to the terms of the Release included on pages 4-5 of the Notice and as set for in the Settlement Agreement.


Date: _____                    _____
                                         Signature


_____                    _____
Last Four Digits of                      Name (Printed)
Social Security Number


Telephone number*: _____    E-mail*: _____


*The Settlement Claims Administrator may use this information to contact you with questions concerning your claim form.  No one will solicit you or use your contact information for any other purpose.

{00280560 }

# EXHIBIT C

### *REMINDER NOTICE REGARDING CLASS ACTION SETTLEMENT*

This document has been sent to you under Court Order and Supervision.
It is not an advertisement.

RE:     *Reed v. Friendly's Ice Cream, LLC. and TICC Inc.*, M.D. Pa. Case No. 15-cv-00298-SHR.

      Our records show that you are a current or former Server for Friendly's Ice Cream, LLC and/or TICC, Inc.  You are eligible to participate in a class action settlement addressing alleged wage and hour violations at Friendly's restaurants.  A Notice of this lawsuit and Claim Form were mailed to you on [MAILING DATE].  You have not yet returned the Claim Form included in the Notice packet.  You must return the claim form by [RETURN DEADLINE] to participate in the settlement.

      As described in the Notice, if you do not complete and return the Claim Form by [RETURN DEADLINE], you will not receive any money from the settlement and you will provide Friendly's and TICC with a broad release of liability for the wage and hour claims asserted for the Class Period at issue in the *Reed* case.

      For more information about the case, or to request another copy of the Notice or Claim Form, please call RG2, the settlement Claims Administrator at [PHONE].

# EXHIBIT D-1

## SUPPLEMENTAL SETTLEMENT AGREEMENT AND RELEASE

This Supplemental Settlement Agreement and Release (the "Agreement") is entered into by and between (a) TISHA REED (hereafter referred to as "Reed"), and (b) FIC HOLDINGS, LLC, the successor by merger with FRIENDLY'S ICE CREAM, LLC ("Friendly's") ("Friendly's" or "Defendant").

1.     **Purpose:**    This Supplemental Settlement Agreement and Release supplements and incorporates the Joint Stipulation of Settlement and Release to be executed by the Parties and filed with the Court.  The purpose of this Agreement is to fully and conclusively resolve and settle **all** matters and claims Reed could assert against Defendant and its current or former parents, subsidiaries, affiliates, divisions, predecessors, successors, subrogees, assigns, benefit plans and related companies (including any entity which Reed may allege jointly employed her), and each and all of their current or former agents, officers, directors, shareholders, members, employees, representatives, managers, attorneys, successors, predecessors, administrators, heirs, executors, trustees, assigns and insurers, and all persons acting by, through, under or in concert with any of them, and each of them (hereinafter referred to collectively as the "Released Defendants"), including, but not limited to, any claims for relief that were made or could have been made by Reed in the matter of *Tisha Reed, Natasha Walker and Kaylee Metz v. Friendly's Ice Cream, LLC and TICC Inc.,* in the United States District Court for the Middle District of Pennsylvania, Civil Action No. 3:15-cv-0298-SHR (hereinafter referred to as the "Lawsuit").  It is a further and equal purpose of this Agreement to resolve **any and all** disputes, controversies, or claims, that Reed may have against Released Defendants, which arise out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law.

2.     **Opportunity to Negotiate, Consider and Consult with Counsel:**    The terms of this Agreement are the product of negotiations between the Parties hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.  In executing this Agreement, Reed has not relied on any representation, compromise, conduct or action made by or on behalf of Defendant or Defendant's attorneys.  Reed acknowledges that she has obtained the advice of competent counsel regarding this Agreement and agrees that she has been given a reasonable period of time within which to consider this Agreement.  Reed and Defendant confirm that they have had this Agreement explained to them by their respective attorneys, they are relying on their own judgment and on the advice of their respective attorneys in executing this Agreement, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

**3.**   **No Admission of Liability:**   The parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any liability, wrongdoing or unlawful conduct whatsoever, whether by omission or commission, by or on the part of any Party, and that Defendant expressly denies any such liability and conduct.

**4.**   **Consideration:**   The consideration given to Reed under this Agreement and the Joint Stipulation of Settlement and Release consists of payment to Reed of Ten Thousand Dollars and Zero Cents ($10,000.00), plus Reed's proportionate share of the Net Settlement Fund as set forth in the Joint Stipulation and Settlement Agreement.   The consideration given by Reed to Defendant in support of this Agreement consists of full performance of each and every one of the respective material obligations described in this document.

**5.**   **Release of Defendant:**   For and in consideration of the required acts and promises set forth in the text of this Agreement, Reed, for herself and her heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharges Defendant and the Released Defendants from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which Reed has or might have as a result of, or in any way connected with Reed's employment or separation of employment with Defendant, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and the Commonwealth of Pennsylvania, the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq.*; the Pennsylvania Equal Pay Law, 42 Pa. Cons. Stat. §336.1, *et seq.*; the Pennsylvania Personnel File Inspection Act, 43 P.S. §1321; the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. §260.1, *et seq.*; Pennsylvania Minimum Wage Act of 1968, 43 Pa. Stat. §333.101 *et seq.*); all Pennsylvania and other local, state or federal laws including but not limited to these relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, incentives and other compensation to employees (including under the Fair Labor Standards Act 29 U.S.C.§ 201, *et seq.*), severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal

{00280568 }

**SETTLEMENT AGREEMENT AND RELEASE**
**PAGE 2**

injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which Reed has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law.   By signing this Agreement, Reed promises, covenants and agrees, to the fullest extent permitted by law, that she will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement.   Reed acknowledges and agrees that, except as expressly limited in this release, this release releases and precludes any claims of which she is not now aware and of which she may only become aware at some later date.   Nevertheless, Reed fully and freely intends to and does, by executing this Agreement, release any such claims.   Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

**6.**      **No Re-Employment:**   Reed understands, acknowledges and agrees that her employment with Defendant terminated effective the close of business on August 2, 2015 (the "Termination Date"), that she ceased to be employed by Defendant as of the Termination Date and that she will not seek re-employment with or by Defendant.   Reed expressly waives and disclaims any right to reinstatement or reemployment with or by Defendant, and promises and agrees never to seek employment or reinstatement with or by Defendant, or its parent companies, subsidiaries, affiliates, divisions, predecessors, successors and/or related companies, at any time in the future. Reed agrees and acknowledges that her signature on this Agreement is grounds for immediate rejection of any application for employment or reinstatement submitted by her. Furthermore, nothing in this Paragraph shall impact Reed's employment relationship with any companies that subsequently merge with, acquire, or are acquired by Defendant, nor will it preclude Reed from applying for employment with any companies which are not currently owned or affiliated with Defendant but which subsequently merge with, acquire, or are acquired by Defendant.

**7.**      **Acknowledgment of Receipt of All Payment Owed:**   Reed agrees and acknowledges that she has received all salary, wages, commissions, Paid Time Off (PTO), overtime payments, liquidated damages and employee benefits to which Reed was and/or is entitled as a result of Reed's employment with Defendant, and specifically waives, releases and discharges any right or entitlement she may have to any further compensation or other payments from Defendant, except as set forth in this Agreement.

**8.**      **Non-Disparagement and No Testimony:**   Reed agrees that she will neither say, write nor communicate in any manner to any person or entity anything derogatory or disparaging about Defendant, regardless of the truth or falsity of the information, except that nothing in this provision shall prevent Reed from making any truthful statement in connection with any legal proceeding or any investigation by any governmental authority.   Defendant promises and agrees not to authorize any person to say, write, express, communicate or relate anything disparaging, false

{00280568  }

**SETTLEMENT AGREEMENT AND RELEASE**

or defamatory about Reed to any third person or entity not employed by Defendant, except that nothing in this provision shall prevent Defendant or its employees from making any truthful statement in connection with any legal proceeding or any investigation by any governmental authority.  Reed understands that she should direct inquiries from her employers or prospective employers seeking verification of her employment with Defendant to:

The Work Number
www.theworknumber.com/verifier
1-800-367-5690
Employer Code for Friendly ICC:  11145

Defendant hereby confirms that, upon receipt of a request for information from Reed's employers or prospective employers seeking verification of her employment with Defendant, Defendant shall provide or confirm only Reed's employment status, dates of employment and job title, and shall not disclose any information about the circumstances of or reasons for the termination of her employment with the Defendant.

**9.      Attorneys' Fees.**  Subject only to the application for attorney's fees as set forth in the Joint Stipulation of Settlement and Release in which Reed's counsel seeks fees up to $1,100,000 in connection with the Lawsuit,   Reed expressly acknowledges and agrees that she alone is responsible and liable for paying any and all attorneys' fees and related costs and disbursements she has incurred in connection with (i) her prior employment relationship with Defendant and the termination of that relationship, (ii) the claims she has asserted or alleged or could have asserted or alleged against Defendant or each or any of the Released Defendants, and (iii) the negotiation and drafting of this Agreement, and that Defendant and each or any of the Released Defendants have no responsibility or obligation whatsoever to pay any such attorneys' fees, costs, or disbursements.

**10.      Medicare Reporting Requirements.**  The parties have considered Medicare's interest in this matter, if any, and Reed  declares and expressly warrants that she is not Medicare eligible nor within thirty (30) months of becoming Medicare eligible; is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security benefits for 24 months or longer; and has not applied for Social Security disability benefits, and/or has not been denied Social Security disability benefits and appealing the denial; and therefore, no Medicare Set Aside Allocation is being established. Reed attests that the claims released herein are not related to any illness or injury for which Reed would apply or receive Medicare benefits.  Reed understands that she is required by law to disclose this information to Defendant and its attorneys in connection with this Agreement.  Reed understands that failure to do so may result in penalties being assessed against Reed, the parties, and attorneys.  Reed declares and warrants that she is aware of the requirements of the Medicare Secondary Payer Act ("MSP"), and Reed understands that Medicare has an interest in recovering any benefits paid when it is used as a source of secondary payment. Reed therefore agrees to release, hold harmless, and indemnify Released Defendants from any remedies, reprisals, or penalties that result from Reed's failure to disclose or release Reed's status as a Medicare beneficiary.  In the event that any of the above information provided by Reed is false or in any way incorrect, Reed shall be solely liable for any and all actions, causes of actions, penalties, claims, costs, services, compensation or the like resulting from these   inaccuracies.   Reed

acknowledges that Medicare may require her to exhaust the payment in Paragraph 4 on Medicare covered expenses should she become Medicare eligible within thirty (30) months. Reed waives any claims for damages, including a private cause of action provided in the MSP, 42 U.S.C. Section 1395(b)(3)(A), should Medicare deny coverage for any reason, including the failure to establish a set aside allocation to protect Medicare's interest.

11. **Knowing And Voluntary Agreement.** The Parties to this Agreement acknowledge and agree that each of them has had a full opportunity to carefully review the terms and provisions of this Agreement and to review the Agreement with their own attorney, that to the extent they wanted to talk to an attorney about this Agreement they have availed themselves of that right, and that each of them enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other Party to this Agreement other than those specifically set out herein and that they understand this Agreement constitutes a final and complete release of all claims against the Party released, regardless of their kind or character, including any possible claim which might be discovered in the future. By executing this Agreement, all the Parties represent and agree that they have carefully read and fully understand all the provisions of this Agreement, and that they are knowingly and voluntarily entering into this Agreement.

12. **Remedies Upon Breach.** The Parties acknowledge and agree that, in the event of a breach of any of the terms or provisions of this Agreement, nothing in this Agreement shall be construed to preclude or limit any party from asserting claims or filing a lawsuit for the purpose of: (a) recovering moneys paid under this Agreement; (b) enforcing rights under this Agreement; or (c) pursuing any other rights and remedies available under law, including equitable relief, injunctive relief, and damages.

13. **Interpretation Of Agreement.** The Parties to this Agreement acknowledge and agree that: (a) this Agreement and its reduction to final written form are the result of good faith negotiations between the Parties through their respective counsel; (b) said counsel have carefully reviewed and examined this Agreement before execution by said Parties, or any of them; and (c) any statute or rule of construction that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

14. **Assignability And Binding Effect.** This Agreement, and all the provisions contained herein, shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, successors and legal representatives of Reed, and shall inure to the benefit of and be binding upon Defendant and its respective successors and assigns. This Agreement may be transferred or assigned by Defendant. The obligations of Reed under this Agreement may not be delegated and Reed may not assign, transfer, or otherwise convey or dispose of this Agreement, or any of its rights hereunder, and any such attempted delegation, assignment or disposition by Reed shall be null, void, and without effect.

15. **No Changes to Agreement:** No modifications or amendments to any of the terms, conditions, or provisions of this Agreement and the incorporated Joint Stipulation of Settlement and Release may be made except by a written agreement executed by all Parties hereto.

{00280568 }

**16.**   **Ownership of Claims:**   Reed represents and warrants that Reed has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

**17.**   **Governing Law.**   This Agreement, and any disputes arising under or in connection with it shall be governed, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to conflict of law principles.

**18**   **Multiple Originals:**   This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.  Electronic or fax revisions shall be deemed originals.

**DATE: October _____, 2016**        **Signature: _____**
                                                        **Tisha Reed**

**DATE: October _____, 2016**        **Signature: _____**
                                                        **,**
                                                        **on behalf of FIC Holdings, LLC, the**
                                                        **successor by merger with Friendly's**
                                                        **Ice Cream, LLC**

# EXHIBIT D-2

## SUPPLEMENTAL SETTLEMENT AGREEMENT AND RELEASE

This Supplemental Settlement Agreement and Release (the "Agreement") is entered into by and between (a) LORI ROSENBERRY (hereafter referred to as "Rosenberry"), and (b) FIC HOLDINGS, LLC, the successor by merger with FRIENDLY'S ICE CREAM, LLC ("Friendly's") ("Friendly's" or "Defendant").

**1.     Purpose:**   This Supplemental Settlement Agreement and Release supplements and incorporates the Joint Stipulation of Settlement and Release to be executed by the Parties and filed with the Court.  The purpose of this Agreement is to fully and conclusively resolve and settle **all** matters and claims Rosenberry could assert against Defendant and its current or former parents, subsidiaries, affiliates, divisions, predecessors, successors, subrogees, assigns, benefit plans and related companies (including any entity which Rosenberry may allege jointly employed her), and each and all of their current or former agents, officers, directors, shareholders, members, employees, representatives, managers, attorneys, successors, predecessors, administrators, heirs, executors, trustees, assigns and insurers, and all persons acting by, through, under or in concert with any of them, and each of them (hereinafter referred to collectively as the "Released Defendants"), including, but not limited to, any claims for relief that were made or could have been made by Rosenberry in the matter of *Tisha Reed, Natasha Walker and Kaylee Metz v. Friendly's Ice Cream, LLC and TICC Inc.,* in the United States District Court for the Middle District of Pennsylvania, Civil Action No. 3:15-cv-0298-SHR (hereinafter referred to as the "Lawsuit").  It is a further and equal purpose of this Agreement to resolve **any and all** disputes, controversies, or claims, that Rosenberry may have against Released Defendants, which arise out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law.

**2.     Opportunity to Negotiate, Consider and Consult with Counsel:**   The terms of this Agreement are the product of negotiations between the Parties hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.  In executing this Agreement, Rosenberry has not relied on any representation, compromise, conduct or action made by or on behalf of Defendant or Defendant's attorneys.  Rosenberry acknowledges that she has obtained the advice of competent counsel regarding this Agreement and agrees that she has been given a reasonable period of time within which to consider this Agreement.  Rosenberry and Defendant confirm that they have had this Agreement explained to them by their respective attorneys, they are relying on their own judgment and on the advice of their respective attorneys in executing this Agreement, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

**3.**     **No Admission of Liability:**     The parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any liability, wrongdoing or unlawful conduct whatsoever, whether by omission or commission, by or on the part of any Party, and that Defendant expressly denies any such liability and conduct.

**4.**     **Consideration:**     The consideration given to Rosenberry under this Agreement and the Joint Stipulation of Settlement and Release consists of payment to Rosenberry of Two Thousand Dollars and Zero Cents ($2,000.00), plus Rosenberry's proportionate share of the Net Settlement Fund as set forth in the Joint Stipulation and Settlement Agreement.  The consideration given by Rosenberry to Defendant in support of this Agreement consists of full performance of each and every one of the respective material obligations described in this document.

**5.**     **Release of Defendant:**     For and in consideration of the required acts and promises set forth in the text of this Agreement, Rosenberry, for herself and her heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharges Defendant and the Released Defendants from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which Rosenberry has or might have as a result of, or in any way connected with Rosenberry's employment or separation of employment with Defendant, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and the Commonwealth of Pennsylvania, the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq.*; the Pennsylvania Equal Pay Law, 42 Pa. Cons. Stat. §336.1, *et seq.*; the Pennsylvania Personnel File Inspection Act, 43 P.S. §1321; the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. §260.1, *et seq.*; Pennsylvania Minimum Wage Act of 1968, 43 Pa. Stat. §333.101 *et seq.*); all Pennsylvania and other local, state or federal laws including but not limited to these relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, incentives and other compensation to employees (including under the Fair Labor Standards Act 29 U.S.C.§ 201, *et seq.*), severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal

{00280570_}

**SETTLEMENT AGREEMENT AND RELEASE**
                                     **PAGE 2**

injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which Rosenberry has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law.  By signing this Agreement, Rosenberry promises, covenants and agrees, to the fullest extent permitted by law, that she will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement.  Rosenberry acknowledges and agrees that, except as expressly limited in this release, this release releases and precludes any claims of which she is not now aware and of which she may only become aware at some later date.  Nevertheless, Rosenberry fully and freely intends to and does, by executing this Agreement, release any such claims.  Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

6.     **Acknowledgment of Receipt of All Payment Owed:**    Rosenberry agrees and acknowledges that she has received all salary, wages, commissions, Paid Time Off (PTO), overtime payments, liquidated damages and employee benefits to which Rosenberry was and/or is entitled as a result of Rosenberry's employment with Defendant, and specifically waives, releases and discharges any right or entitlement she may have to any further compensation or other payments from Defendant, except as set forth in this Agreement.

7.     **Attorneys' Fees.**  Subject only to the application for attorney's fees as set forth in the Joint Stipulation of Settlement and Release in which Rosenberry's counsel seeks fees up to $1,100,000 in connection with the Lawsuit,   Rosenberry expressly acknowledges and agrees that she alone is responsible and liable for paying any and all attorneys' fees and related costs and disbursements she has incurred in connection with (i) her prior employment relationship with Defendant and the termination of that relationship, (ii) the claims she has asserted or alleged or could have asserted or alleged against Defendant or each or any of the Released Defendants, and (iii) the negotiation and drafting of this Agreement, and that Defendant and each or any of the Released Defendants have no responsibility or obligation whatsoever to pay any such attorneys' fees, costs, or disbursements.

8.     **Medicare Reporting Requirements.**  The parties have considered Medicare's interest in this matter, if any, and Rosenberry declares and expressly warrants that she is not Medicare eligible nor within thirty (30) months of becoming Medicare eligible; is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security benefits for 24 months or longer; and has not applied for Social Security disability benefits, and/or has not been denied Social Security disability benefits and appealing the denial; and therefore, no Medicare Set Aside Allocation is being established. Rosenberry attests that the claims released herein are not related to any illness or injury for which Rosenberry would apply or receive Medicare benefits.  Rosenberry understands that she is required by law to disclose this information to Defendant and its attorneys in

connection with this Agreement.  Rosenberry understands that failure to do so may result in penalties being assessed against Rosenberry, the parties, and attorneys.  Rosenberry declares and warrants that she is aware of the requirements of the Medicare Secondary Payer Act ("MSP"), and Rosenberry understands that Medicare has an interest in recovering any benefits paid when it is used as a source of secondary payment.  Rosenberry therefore agrees to release, hold harmless, and indemnify Released Defendants from any remedies, reprisals, or penalties that result from Rosenberry's failure to disclose or release Rosenberry's status as a Medicare beneficiary.  In the event that any of the above information provided by Rosenberry is false or in any way incorrect, Rosenberry shall be solely liable for any and all actions, causes of actions, penalties, claims, costs, services, compensation or the like resulting from these inaccuracies.  Rosenberry acknowledges that Medicare may require her to exhaust the payment in Paragraph 4 on Medicare covered expenses should she become Medicare eligible within thirty (30) months.  Rosenberry waives any claims for damages, including a private cause of action provided in the MSP, 42 U.S.C. Section 1395(b)(3)(A), should Medicare deny coverage for any reason, including the failure to establish a set aside allocation to protect Medicare's interest.

**9.**     **Knowing And Voluntary Agreement.**  The Parties to this Agreement acknowledge and agree that each of them has had a full opportunity to carefully review the terms and provisions of this Agreement and to review the Agreement with their own attorney, that to the extent they wanted to talk to an attorney about this Agreement they have availed themselves of that right, and that each of them enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other Party to this Agreement other than those specifically set out herein and that they understand this Agreement constitutes a final and complete release of all claims against the Party released, regardless of their kind or character, including any possible claim which might be discovered in the future.  By executing this Agreement, all the Parties represent and agree that they have carefully read and fully understand all the provisions of this Agreement, and that they are knowingly and voluntarily entering into this Agreement.

**10.**     **Remedies Upon Breach.**  The Parties acknowledge and agree that, in the event of a breach of any of the terms or provisions of this Agreement, nothing in this Agreement shall be construed to preclude or limit any party from asserting claims or filing a lawsuit for the purpose of: (a) recovering moneys paid under this Agreement; (b) enforcing rights under this Agreement; or (c) pursuing any other rights and remedies available under law, including equitable relief, injunctive relief, and damages.

**11.**     **Interpretation Of Agreement.**  The Parties to this Agreement acknowledge and agree that: (a) this Agreement and its reduction to final written form are the result of good faith negotiations between the Parties through their respective counsel; (b) said counsel have carefully reviewed and examined this Agreement before execution by said Parties, or any of them; and (c) any statute or rule of construction that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

**12.**     **Assignability And Binding Effect.**  This Agreement, and all the provisions contained herein, shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, successors and legal representatives of Rosenberry, and shall inure to the benefit of and be

{00280570 }

**SETTLEMENT AGREEMENT AND RELEASE**

binding upon Defendant and its respective successors and assigns. This Agreement may be transferred or assigned by Defendant. The obligations of Rosenberry under this Agreement may not be delegated and Rosenberry may not assign, transfer, or otherwise convey or dispose of this Agreement, or any of its rights hereunder, and any such attempted delegation, assignment or disposition by Rosenberry shall be null, void, and without effect.

**13.** **No Changes to Agreement:** No modifications or amendments to any of the terms, conditions, or provisions of this Agreement and the incorporated Joint Stipulation of Settlement and Release may be made except by a written agreement executed by all Parties hereto.

**14.** **Ownership of Claims:** Rosenberry represents and warrants that Rosenberry has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

**15.** **Governing Law.** This Agreement, and any disputes arising under or in connection with it shall be governed, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to conflict of law principles.

**16.** **Multiple Originals:** This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Electronic or fax revisions shall be deemed originals.

**DATE: October \_\_\_\_, 2016**     **Signature: _____**
                                        **Lori Rosenberry**

**DATE: October \_\_\_\_, 2016**     **Signature: _____**
                                        **,**
                                        **on behalf of FIC Holdings, LLC, the successor by merger with Friendly's Ice Cream, LLC**

# EXHIBIT D-3

## SUPPLEMENTAL SETTLEMENT AGREEMENT AND RELEASE

This Supplemental Settlement Agreement and Release (the "Agreement") is entered into by and between (a) KAYLEE METZ (hereafter referred to as "Metz"), and (b) FIC HOLDINGS. LLC, the successor by merger with Friendly's Ice Cream, LLC ("Friendly's") and TICC, Inc., ("TICC") (collectively, the "Defendants")

**1.      Purpose:**   This Supplemental Settlement Agreement and Release supplements and incorporates the Joint Stipulation of Settlement and Release to be executed by the Parties and filed with the Court.  The purpose of this Agreement is to fully and conclusively resolve and settle **all** matters and claims that Metz could assert against Defendants, or either of them, and any of their respective current or former parents, subsidiaries, affiliates, divisions, predecessors, successors, subrogees, assigns, benefit plans and related companies (including any entity which Metz may allege jointly employed her), and each and all of their respective current or former agents, officers, directors, shareholders, members, employees, representatives, managers, attorneys, successors, predecessors, administrators, heirs, executors, trustees, assigns and insurers, and all persons acting by, through, under or in concert with any of them, and each of them (hereinafter referred to collectively as the "Released Defendants"), including, but not limited to, any claims for relief that were made or could have been made by Metz in the matter of *Tisha Reed, Natasha Walker and Kaylee Metz v. Friendly's Ice Cream, LLC and TICC Inc.,* in the United States District Court for the Middle District of Pennsylvania, Civil Action No. 3:15-cv-0298-SHR (hereinafter referred to as the "Lawsuit").  It is a further and equal purpose of this Agreement to resolve **any and all** disputes, controversies, or claims, that Metz may have against Released Defendants , which arise out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law.

**2.      Opportunity to Negotiate, Consider and Consult with Counsel:**   The terms of this Agreement are the product of negotiations between the Parties hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.   In executing this Agreement, Metz has not relied on any representation, compromise, conduct, or action made by or on behalf of either Defendant or their attorneys.  Metz acknowledges that she has obtained the advice of competent counsel regarding this Agreement and agrees that she has been given a reasonable period of time within which to consider this Agreement.  Metz and Defendants confirm that they have had this Agreement explained to them by their respective attorneys, they are relying on their own judgment and on the advice of their respective attorneys in executing this Agreement, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

**3.**     **No Admission of Liability:**     The parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any liability, wrongdoing or unlawful conduct whatsoever, whether by omission or commission, by or on the part of any party, and that Defendants expressly deny any such liability and conduct.

**4.**     **Consideration:**     The consideration given to Metz under this Agreement and the Joint Stipulation of Settlement and Release consists of payment to Metz of Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00), plus Metz's proportionate share(s) of the Defendant's respective Net Settlement Funds as set forth in the Joint Stipulation and Settlement Agreement,.   The consideration given by Metz to Defendants in support of this Agreement consists of full performance of each and every one of the respective material obligations described in this document.

**5.**     **Release of Defendants:**     For and in consideration of the required acts and promises set forth in the text of this Agreement, Metz, for herself and her heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharges Defendants and the Released Defendants from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which Metz has or might have as a result of, or in any way connected with Metz's employment or separation of employment with each   Defendant, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and the Commonwealth of Pennsylvania, the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq.*; the Pennsylvania Equal Pay Law, 42 Pa. Cons. Stat. §336.1, *et seq.*; the Pennsylvania Personnel File Inspection Act, 43 P.S. §1321; the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. §260.1, *et seq.*; Pennsylvania Minimum Wage Act of 1968, 43 Pa. Stat. §333.101 *et seq.*); all Pennsylvania and other local, state or federal laws including but not limited to these relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, incentives and other compensation to employees (including under the Fair Labor Standards Act 29 U.S.C.§ 201, *et seq.*), severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct,

{00280572_}

interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which Metz has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law. By signing this Agreement, Metz promises, covenants and agrees, to the fullest extent permitted by law, that she will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement. Metz acknowledges and agrees that, except as expressly limited in this release, this release releases and precludes any claims of which she is not now aware and of which she may only become aware at some later date. Nevertheless, Metz fully and freely intends to and does, by executing this Agreement, release any such claims. Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

6.    **No Re-Employment:** Metz understands, acknowledges and agrees that her employment with Defendant Friendly's terminated effective the close of business on September 10, 2015 and that her employment with Defendant TICC terminated effective the close of business on May 25, 2013, that she ceased to be employed by Defendants as of the aforesaid dates, and that she will not seek re-employment with or by either Defendant. Metz expressly waives and disclaims any right to reinstatement or reemployment with or by either Defendant, and promises and agrees never to seek employment or reinstatement with or by either Defendant, or their respective parent companies, subsidiaries, affiliates, divisions, predecessors, successors and/or related companies, at any time in the future. Metz agrees and acknowledges that her signature on this Agreement is grounds for immediate rejection of any application for employment or reinstatement submitted by her. Furthermore, nothing in this Paragraph shall impact Metz's employment relationship with any companies that subsequently merge with, acquire, or are acquired by Defendants, nor will it preclude Metz from applying for employment with any companies which are not currently owned or affiliated with Defendants but which subsequently merge with, acquire, or are acquired by Defendants.

7.    **Acknowledgment of Receipt of All Payment Owed:** Metz agrees and acknowledges that she has received all salary, wages, commissions, Paid Time Off (PTO), overtime payments, liquidated damages and employee benefits to which Metz was and/or is entitled as a result of Metz's employment with Defendants, and specifically waives, releases and discharges any right or entitlement she may have to any further compensation or other payments from either Defendant, except as set forth in this Agreement.

8.    **Non-Disparagement and No Testimony:**   Metz agrees that she will neither say, write nor communicate in any manner to any person or entity anything derogatory or disparaging about Defendants, regardless of the truth or falsity of the information, except that nothing in this provision shall prevent Metz from making any truthful statement in connection with any legal proceeding or any investigation by any governmental authority.   Defendants promise and agree not to authorize any person to say, write, express, communicate or relate anything disparaging, false or defamatory about Metz to any third person or entity not employed by Defendants, except that nothing in this provision shall prevent Defendants or its employees from making any truthful statement in connection with any legal proceeding or any investigation by any governmental authority.   Metz understands that she should direct inquiries from her employers or prospective employers seeking verification of her employment with Defendant TICC, to Karen Burkholder, District Manager, at 717-295-7838 and with Defendant Friendly's to:

The Work Number
www.theworknumber.com/verifier
1-800-367-5690
Employer Code for Friendly ICC:  11145

Each Defendant hereby confirms that, upon receipt of a request for information from Metz's employers or prospective employers seeking verification of her employment with Defendant, the responding Defendant shall provide or confirm only Metz's employment status, dates of employment and job title, and shall not disclose any information about the circumstances of or reasons for the termination of her employment with the Defendant.

9.    **Attorneys' Fees.**   Subject only to the application for attorney's fees as set forth in the Joint Stipulation of Settlement and Release in which Metz's counsel seeks fees up to $1,100,000 in connection with the Lawsuit,   Metz expressly acknowledges and agrees that she alone is responsible and liable for paying any and all attorneys' fees and related costs and disbursements she has incurred in connection with (i) her prior employment relationship with Defendant and the termination of that relationship, (ii) the claims she has asserted or alleged or could have asserted or alleged against Defendant or each or any of the Released Defendants, and (iii) the negotiation and drafting of this Agreement, and that Defendant and each or any of the Released Defendants have no responsibility or obligation whatsoever to pay any such attorneys' fees, costs, or disbursements.

10.    **Medicare Reporting Requirements.**   The parties have considered Medicare's interest in this matter, if any, and Metz  declares and expressly warrants that she is not Medicare eligible nor within thirty (30) months of becoming Medicare eligible; is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security benefits for 24 months or longer; and has not applied for Social Security disability benefits, and/or has not been denied Social Security disability benefits and appealing the denial; and therefore, no Medicare Set Aside Allocation is being established. Metz attests that the claims released herein are not related to any illness or injury for which Metz would apply or receive Medicare benefits.  Metz understands that she is required by law to disclose this information to Defendants and its attorneys in connection with this Agreement.  Metz understands that failure to do so may result in penalties being assessed against Metz, the parties, and attorneys.  Metz declares and warrants that she is aware of the requirements of the Medicare Secondary Payer Act ("MSP"), and Metz understands that Medicare

{00280572  }

has an interest in recovering any benefits paid when it is used as a source of secondary payment. Metz therefore agrees to release, hold harmless, and indemnify Released Defendants from any remedies, reprisals, or penalties that result from Metz's failure to disclose or release Metz's status as a Medicare beneficiary.  In the event that any of the above information provided by Metz is false or in any way incorrect, Metz shall be solely liable for any and all actions, causes of actions, penalties, claims, costs, services, compensation or the like resulting from these  inaccuracies.  Metz acknowledges that Medicare may require her to exhaust the payment in Paragraph 4 on Medicare covered expenses should she become Medicare eligible within thirty (30) months.  Metz waives any claims for damages, including a private cause of action provided in the MSP, 42 U.S.C. Section 1395(b)(3)(A), should Medicare deny coverage for any reason, including the failure to establish a set aside allocation to protect Medicare's interest.

**11.** **Knowing And Voluntary Agreement.**  The Parties to this Agreement acknowledge and agree that each of them has had a full opportunity to carefully review the terms and provisions of this Agreement and to review the Agreement with their own attorney, that to the extent they wanted to talk to an attorney about this Agreement they have availed themselves of that right, and that each of them enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other Party to this Agreement other than those specifically set out herein and that they understand this Agreement constitutes a final and complete release of all claims against the Party released, regardless of their kind or character, including any possible claim which might be discovered in the future.  By executing this Agreement, all the Parties represent and agree that they have carefully read and fully understand all the provisions of this Agreement, and that they are knowingly and voluntarily entering into this Agreement.

**12.** **Remedies Upon Breach.**  The Parties acknowledge and agree that, in the event of a breach of any of the terms or provisions of this Agreement, nothing in this Agreement shall be construed to preclude or limit any party from asserting claims or filing a lawsuit for the purpose of: (a) recovering moneys paid under this Agreement; (b) enforcing rights under this Agreement; or (c) pursuing any other rights and remedies available under law, including equitable relief, injunctive relief, and damages.

**13.** **Interpretation Of Agreement.**  The Parties to this Agreement acknowledge and agree that: (a) this Agreement and its reduction to final written form are the result of good faith negotiations between the Parties through their respective counsel; (b) said counsel have carefully reviewed and examined this Agreement before execution by said Parties, or any of them; and (c) any statute or rule of construction that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

**14.** **Assignability And Binding Effect.**  This Agreement, and all the provisions contained herein, shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, successors and legal representatives of Metz, and shall inure to the benefit of and be binding upon Defendants and their respective successors and assigns.   This Agreement may be transferred or assigned by Defendants.  The obligations of Metz under this Agreement may not be delegated and Metz may not assign, transfer, or otherwise convey or dispose of this

{00280572 }

---

Agreement, or any of its rights hereunder, and any such attempted delegation, assignment or disposition by Metz shall be null, void, and without effect.

**15.     No Changes to Agreement:**  No modifications or amendments to any of the terms, conditions, or provisions of this Agreement and the incorporated Joint Stipulation of Settlement and Release may be made except by a written agreement executed by all Parties hereto.

**16.     Ownership of Claims:**  Metz represents and warrants that Metz has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

**17.     Governing Law.**  This Agreement and any disputes arising under or in connection with it shall be governed, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to conflicts of law principles.

**198     Multiple Originals:**  This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.  Electronic or fax revisions shall be deemed originals.

**DATE: October _____, 2016**        **Signature: _____**
                                                         **Kaylee Metz**

**DATE: October _____, 2016**        **Signature: _____**
                                                         **_____,**
                                                         **on behalf of Friendly's Ice Cream,**
                                                         **LLC**

**DATE: October _____, 2016**        **Signature: _____**
                                                         **Jeff Smith,**
                                                         **President_____,**
                                                         **on behalf of TICC, Inc.**